THEBERATH and others *v.* THE CELLULOID MANUFACTURING Co.

*(Circuit Court, D. New Jersey. July 13, 1880.)*

1. PATENT—ASSIGNMENT—LICENSE.—Any assignment of a patent short of the entire and unqualified monopoly is a mere license.

2. LICENSEES—SURRENDER.—The surrender of a license by part of the licensees does not avoid the license as to the remainder of the licensees.

3. SAME—ACTION ON LICENSE—PARTIES.—The licensees who have been released by such surrender need not be joined with the remainder of the licensees in an action on the license.

On Demurrer.

*Philip W. Cross*, for plaintiffs.

*Kays & Coult*, for defendant.

NIXON, D. J. This is an action for breach of covenant, brought originally in the circuit court of the county of Essex, New Jersey, and removed by the plaintiffs into this court under the provisions of the act of congress regulating the removal of causes, approved March 3, 1875. There was a general demurrer to the declaration filed in the court below, which the court, after argument, sustained, and leave was granted to the plaintiffs to amend. An amended declaration was thereupon filed, to which the defendant, after craving oyer of the writing or agreement mentioned in the declaration, again put in a demurrer, and the question to be determined depends upon the nature and character of the contract on which the suit is brought.

The declaration in substance alleges that the defendant corporation was the owner of the two several patents, one for an improvement in treating and moulding pyroxyline, and the other for making a certain valuable substance or compound known as celluloid, and, being such owners, on the tenth day of March, 1872, by a certain indenture between the defendant corporation of the one part and Charles M. Theberath, Jacob H. Theberath, George M. Drake, Samuel J. Coursen, Jr., and Martin M. Drake, of the other part, sealed with the seals of the respective parties, granted, conveyed, and made over to the plaintiffs, as well as to the said George M. Drake, Samuel J. Coursen, Jr., and Martin M. Drake, and to each of them, the full and exclusive right to use the said material within the United States for the purpose of its application to harness, carriage, and trunk trimmings, and for no other use or purpose whatever, as a license under the above-named letters patent, or any other United States letters patent, or parts of the same, or privileges that might then or thereafter be in the possession of the defendant corporation; that the said defendant therein and thereby promised and agreed to prosecute, at their own cost and expense, every party unlawfully infringing said letters patent, or any one or parts of the same, in so far as said letters patent pertained

to carriage, harness, and trunk trimmings, and to afford
ample protection to the plaintiffs, as well as to said Coursen
and the Drakes, and to each of them, their licensees; that the
parties of the second part to the said agreement, in consider-
ation for said license, agreed to give to the defendant corpo-
ration the sum of $1,000 in cash, and as payment for the
material specified in the writing, they, and each of them,
agreed to give to the defendant $2.75 for each and every
pound delivered to the party of the second part ordering the
same, to be delivered at Albany, N. Y., and to be paid for
within 10 days after the delivery; that the said parties, and
each of them, agreed faithfully to use their best endeavors to
introduce the application of the said material to harness,
trunk, and carriage trimmings throughout the United States,
and to make such application and use a profitable branch of
business.

It further alleges that it was provided by the said agree-
ment that if, from any cause, the said defendant corporation
should fail to furnish 100 pounds of celluloid per day, if
requested so to do, on 10 days' previous written notice, or
any other amount, up to 500 pounds per day, on 60 days' no-
tice in writing, then the said parties of the second part, or
either of them, should be at liberty to prepare the material
for the purpose set forth in the agreement, and should keep
books of account showing the amount by weight of said ma-
terial so made and used by them, or either of them, and
should make returns under oath, on the first days of Janu-
ary, April, July, and October, of each year, during the contin-
uance of the said manufacture, of all the material thus made,
and within 10 days after each date of return should pay to
the defendant corporation the sum of one dollar as royalty for
every pound of the material specified in the said agreement.

The declaration then alleges that although the plaintiffs
have always kept and performed all things in the license con-
tained on their part to be kept and performed, and although
the defendant corporation was bound to furnish to the plain-
tiffs celluloid in such colors and quantities as they desired,
not to exceed 100 pounds per day, upon 10 days' notice, nor

500 pounds per day, on 60 days' notice, yet the defendant, disregarding the rights of the plaintiffs, refuse to deliver to the plaintiffs any celluloid, though often requested so to do, according to the terms of the said license, and in quantities less than 100 pounds per day, and have revoked, or pretended to revoke, said license, and have granted another license for the same thing, covering the same territory as the license herein described and set forth, to other persons, who have established a large and profitable business thereunder, and have deprived plaintiffs of the use of the said license for a long time, to-wit, from the time of granting the same to the end and term of the patents under which the same was granted; that previous to the refusal of the defendant corporation to furnish to the plaintiffs celluloid as therein set forth, the said George M. Drake, Samuel Coursen, Jr., and Martin M. Drake surrendered all their right, title, and interest to and in the said license to the defendant; that the defendant accepted the surrender, whereby the plaintiffs became the sole owners thereof; and that Jacob H. Theberath has, before the commencement of this suit, transferred and assigned all his right and interest to and in the same to the said Charles M. Theberath, whereby the said Charles has become and now is the sole owner thereof.

The issue raised by the demurrer turns upon the question whether the contract on which the suit is brought is joint or several. The counsel for the demurrants insists that it is a license, authorizing the licensees jointly to use the patented article in the manner and upon the terms specified in the agreement, and that no action is maintainable thereon by any number of the licensees less than the whole number. The counsel for the plaintiffs, on the other hand, contends that the contract is, in fact, an assignment of a portion of the patent to grantees; that the several owners of a patent are not partners, but tenants in common, and that each part owner has the right to order and use the patented article without the consent of the other, and hence that the grantor is severally liable to each one of the grantees for the breach of the covenants of the agreement.

1. I think it is quite clear, from the terms of the contract, that it must be construed as a mere license to use celluloid, rather than an assignment of a patent-right. The difference between a license and an assignment was determined by the supreme court in *Gayler* v. *Wilder*, 10 How. 477, where it was held that any assignment of a patent, short of the entire and unqualified monopoly, is a mere license. Curtis, in his work on Patents, says that while an assignment vests in the grantee the exclusive right, either for the whole country or for a particular district, of making and using the thing patented, and of granting that right to others, a license is an authority to exercise some of the privileges secured by the patent, but which still leaves an interest in the monopoly in the patentee. Sections 212-3.

In the present case, the instrument executed by the parties to transfer a right to use or manufacture the patented article is called by them a license, and not an assignment. This is not conclusive, but suggestive of their intention; and all pretence of an assignment is negatived by the clause in which the grantor covenants to prosecute, at its own expense, every party or parties that unlawfully infringe the letters patent, or any one or parts of the same, remaining in its possession, so far as they pertain to carriage, harness, and trunk trimmings.

Not only did the grantor retain the patents, but it also retained the use and control of the invention, except so far as the same could be applied to a particular branch of industry or manufacture, to-wit, harness, carriage, and trunk trimmings. It promises and agrees, for a stipulated price, to promptly fill all orders of the licensees for the material required by them in said manufacture, and in the event of its failure to fill them with reasonable promptitude—to-wit, orders for less than 100 pounds per day on demand, orders for 100 pounds upon 10 days' notice, and orders for any other amount up to 500 pounds upon 60 days' notice—the licensees are at liberty to prepare the said material, for the purpose and use aforesaid, to any extent needed in their business, by rendering quarterly statements under oath of the amount of their manufacture, and by paying therefor the royalty of one dollar per

pound for every pound manufactured by them. A contract with such provisions falls fairly within the definition of a license.

2. Whether it is a joint contract with all the licensees, or several with each, is a more difficult question to answer. The difficulty arises from two sources: *First*, from the loose and careless use of words in the agreement itself; and, *second*, from the fact that the law determines whether a covenant is joint or several much more from the subject-matter of the contract than from the words employed. Williams on Personal Property, 304.

The contract on its face is said to be between the defendant party of the first part, and George M. Drake, Samuel J. Coursen, Jr., Charles M. Theberath, Jacob H. Theberath, and Martin M. Drake, party of the second part, "for themselves, their heirs, executors, administrators, and assigns, respectively."

The obvious and most usual meaning of the word *respectively* is "as relating to each." It is not easy to say what the parties meant by its use in the foregoing connection. If it has reference to the *persons* composing the party of the second part, as well as their heirs, executors, administrators, and assigns, do not each of the individuals have a separate and distinct interest in the license, and is not each one entitled to the use of the invention in the manner and upon the conditions expressed in the contract? And why should there be a covenant with the *assigns respectively* of the licensees, if each one had not the right to individually use or individually assign his interest without the concurrence of his co-licensees? But it may be admitted that the words used *prima facie* import a joint covenant; yet, if the covenantees have a separate interest in the subject-matter, each may have a separate cause of action, and to this effect are all the authorities. *Windham's Case,* 5 Rep. 8a; *Slingsby's Case,* Id. 19a; *Eccleston* v. *Clipsham,* 1 Saund. R. 153–154, (1;) *James* v. *Emery,* 8 Taunt. 129–245; *Thomas* v. *Pyke,* 4 Bibb, 418–420.

Does the agreement convey to these licensees a separate interest in the subject-matter of the grant? It licenses them

all as individuals to use the patented article. It does not say, in express terms, whether they are to act jointly or severally. They are to have the full and exclusive right of using the material within the United States and their territories in its application to harness, carriage, and trunk trimmings, and for no other use or purpose whatever. It was the interest and design of the patentee to have the material applied as largely as possible to such purpose. To this end the defendant corporation required the licensees to covenant and agree to use their best endeavors to make such application and use a profitable and extensive branch of business. In view of this fact, it would seem that the licensor ought not to complain of any construction which would most extensively introduce the patented article into general use, by its application to harness, carriage, and trunk trimmings.

But, without expressing any opinion on this point, I think there is another fact appearing in the case that did not appear in the court below, and which estops the defendant from objecting to the non-joinder of the other licensees as plaintiffs in the suit. The declaration alleges that, previous to the defendant's refusal to furnish celluloid to the plaintiffs, the said George M. Drake, Samuel Coursen, Jr., and Martin M. Drake surrendered all their right, title, and interest to and in said license to defendant, and the defendant accepted said surrender, whereby the plaintiffs became the sole owners thereof.

The demurrer admits the fact alleged, and we have thus presented this interesting question, where five persons are licensed to use a patented article, and the licensor afterwards agrees that three may surrender their interest, whether the remaining two may still exercise the rights and privileges conferred by the license.

I can perceive no reason why they should not be allowed to do so, nor why the defendant, after agreeing to such severance of interest, should not be estopped from setting up that the released licensees did not join in the suit upon a contract in which, by their voluntary act, and with the assent of the defendant, they had no further concern.

It was urged by the learned counsel of the defendant, on the argument, that if the surrender and release took place, as alleged, such act rendered the whole contract void, and the plaintiffs were out of court; and in support of this view the well-recognized principle of law was quoted, that where there are mutual covenants and joint covenantees a release of one is a release of all. It is true that if several covenantees enter into joint covenants, and the covenantor afterwards release one or more, he will not be permitted to maintain a suit on the covenants against the remaining covenantees, because such a release destroyed his right of action against the survivors; but that is not this case and the principle does not apply. Here, five men acquire certain rights and privileges in a patented article; they pay $1,000 in cash for the license, and agree to pay a stipulated royalty, besides, for all that they can use in a designated business. The patentee subsequently agrees with three of the licensees that they shall be released from the contract, and this is done without any consultation with the remaining two. These two, faithfully performing all their covenants and agreements, insist that the licensor shall continue to perform his, as to them, and, upon failure, institute their suit for its breach of covenants. Why should the defendant be allowed to claim that those whom it has released, and who have no interest, should be parties, and to defeat the recovery because they are not joined? Nothing but the most absolute necessity would justify the court in permitting the defendant corporation thus to plead and take advantage of its own act to escape responsibility. I do not perceive such necessity, and am constrained to overrule the demurrer, with costs.