WARTIK ET AL. *v.* MILLER, ADMX.

(Decided June 4, 1934.)

*Mr. Alfred Geisler, Mr. John C. Thompson* and *Mr. Sol Goodman,* for plaintiffs in error.
*Mr. J. T. Rhyno, Mr. Cecil L. Hall* and *Mr. Jesse P. Cobb,* for defendant in error.

Ross, J.  This is a proceeding in error from the Court of Common Pleas of Hamilton county, wherein judgment was rendered in favor of the plaintiff administratrix.

The action was one for pecuniary loss incurred by the children of the decedent, Eliza Lee, by reason of injuries received by decedent through the alleged negligence of Abraham Wartik and Jacob Rauchman, plaintiffs in error, in permitting a stairway in a tenement house to remain unrepaired and unlighted.

The decedent of the defendant in error administratrix was a woman 65 years of age, the mother of a tenant living upon the next floor above the street level in a tenement house in the city of Cincinnati.  The decedent for some weeks prior to the date she received her injuries had been in attendance upon her daughter, who had recently given birth to a child.  In pursuance of such services, the decedent made frequent trips from the apartment of her daughter to various places outside the building.  It was necessary in so doing to pass up and down a flight of stairs extending from the ground floor to the floor above.  The stairs were used by the decedent during both day and night. They were constructed in such a manner as to be divided into two flights, the second flight being caused to rise in the opposite direction from the first flight,

the platform at which the turn was made being eleven steps up, and the second flight consisting of seven steps.

There can be no question from the evidence that one or more strips of metal employed to fasten the linoleum covering upon the outer edge of the steps had become loose, and had been in this condition for many months. One witness for defendant in error administratrix testified that the tin rattled when using the stairs. The stairs were in the same condition at the time the decedent received her injuries that they had been during her visits to her daughter in the previous weeks, and the decedent knew of the loose metal strips. The lower flight of steps was unlighted except for a little light from a glass door in the ground floor apartment. This shone only upon a few steps at the bottom of the first flight. There was a light in the hallway upon the second floor, but this, because of the turn in the stairs, did not light up the upper portion of the first flight leading from the ground floor. It is clear that after nightfall such portion of the stairs was in darkness, and the ordinance of the city of Cincinnati requiring the lighting of stairways was introduced in evidence.

It is obvious from the record that there was ample evidence introduced by the defendant in error to sustain a finding that the owners of the tenement house were negligent both in respect to the loose strips of metal upon the stairs and in failing to properly light the stairway, as required by the appropriate municipal ordinance.

The decedent at about 8:30 p. m. of the day she was injured found it necessary to leave the apartment of her daughter on an errand outside the building. She accordingly proceeded down the stairway in question, the only means of egress from the second floor, and had barely reached the upper steps of the first flight from the ground floor when she went tumbling down

this flight to the bottom of the stairs. A witness who was at the foot of the stairs stated that the decedent's foot struck her on the head, from which it would appear that the decedent turned completely over in her fall down the stairs.

The decedent's statements when she was helped to her feet after her fall were put in evidence. In the words of the witness they merely were: " 'I feel that I broke my back. I think I killed myself.' That is the only thing I remember her saying at the time.''

There is not one scintilla of evidence in the entire record indicating that the loose steps made the decedent fall. Her daughter testified that an examination of one of her shoes, soon after her fall, and when she was helped up to her daughter's apartment; disclosed that a layer of the heel was missing. Whether this was torn off when she fell, or caused her to fall, is a matter of mere conjecture.

Now while it is true that the proximate cause of any injury is always a question for the jury, it must be clear that upon this element of an action for negligence there must be evidence from which the jury may determine the direct connection between the negligence and the injury. 24 Ohio Jurisprudence, 965; *Morton* v. *Stack, a Minor,* 122 Ohio St., 115, 170 N. E., 869; *Sobolovitz* v. *Lubric Oil Co.,* 107 Ohio St., 204, 140 N. E., 634, where it is stated in the syllabus:

"1. To entitle the plaintiff in a personal injury suit to have his case submitted to a jury, it is necessary that he produce some evidence upon every element essential to create liability, or produce evidence of a fact upon which a reasonable inference may be predicated to support such element.

"2. An inference of fact cannot be predicated upon another inference, but must be predicated upon a fact supported by evidence.

"3. Where the plaintiff fails to produce any evidence upon an essential element of his case and no rea-

sonable inference can be drawn from a fact supported by evidence which would tend to prove such element, it is error for the court to submit the case to a jury.''

From the mere co-existence of negligence and an injury a jury cannot be permitted to conjecture, guess, or suppose that there *is* a causal connection, or that the negligence *is* the proximate cause of the injury, when it is apparent that the injury may or may not have been caused by the negligence. What has just been said is applicable to the claim of negligence based upon the loose metal strips, and if this were the only negligence alleged the verdict could not stand. It is claimed, however, that the decedent's injuries were directly caused by the negligence of the plaintiffs in error in failing to comply with the ordinance requiring lighting of the stairway. As said before, there is ample evidence sustaining a finding that the plaintiffs in error were guilty of negligence in this respect. It is again a question for the jury to determine whether such negligence was the proximate cause of the injury. As stated before, however, there must be some evidence to show the causal connection between the negligence and the injury. Was there any evidence from which the jury might properly find that the failure to light the stairs caused the injuries to the decedent?

There seems to us an obvious difference between the presence or absence of causation incident to such a dereliction as is illustrated by the loose metal strips and that incident to the situation produced by an unlighted stairway. In the latter instance, by the negligent act in failing to light the stairway, the user of the stairway is deprived of the value of one of his most helpful senses—sight. He cannot see where his feet are being placed—the darkness affects the balance of even a normal person. His progress is constantly marked by a feeling of insecurity. Each step downward is a venture, and all because the respon-

sible person has failed to comply with the provisions of an ordinance which was manifestly designed to obviate this very hazard.

The fact that the decedent at the time of the accident did not say that her fall was caused by the darkness is of no importance in connection with the charge of negligence. The darkness and its effect upon one using the stairway were so obvious that such a statement would be lacking in significance, if not entirely uncalled for. While it is a fact that many persons constantly use darkened stairways without injury, and that the decedent herself had used the very stairway in question many times after nightfall without accident, the continuing handicap placed upon her by the darkness has in itself sufficient probative value to entitle the jury to find that her fall was caused by this impediment to a safe passage down the stairs. In the case of the metal strips, she may or may not have fallen over them. In the case of the dark stairway, it is a matter of common knowledge that the continuing menace to safety is constantly present and operative toward injury.

Inextricably involved in the consideration of the negligence of the owner of the premises is the question of the contributory negligence of the user of the stairway. By proceeding in the dark, did the decedent as a matter of law subject herself to the charge that she was guilty of negligence directly contributing to her own injuries?

The case of *McKinley* v. *Niederst,* 118 Ohio St., 334, 160 N. E., 850, has been tendered as an authority to this effect. An examination of the authorities considering this case discloses that the courts have consistently distinguished the application of 'this case where the facts are dissimilar. *Roth* v. *Trakas,* 36 Ohio App., 136, 172 N. E., 847; *Tyler* v. *Vistula Realty Co.,* 31 Ohio App., 1, 166 N. E., 240; *Pollock* v. *Reitz,* 38 Ohio App., 487, 176 N. E., 478; *Finck* v. *Hill,* 10

Ohio Law Abs., 404. One rather illogical differentiation has been the fact that in the *McKinley* v. *Niederst case* there was no obligation placed upon the owner to light the stairway. This factor bears naturally upon the question of negligence. We find it now difficult to see its connection with the charge of negligence against the user of the stairway. This feature of the *McKinley case* removes its application to cases of contributory negligence, since there being no negligence on the part of the owner there could have been no contributory negligence, in the correct use of that term.

In a consideration of the facts in the *McKinley case* the court found, first, that there was no negligence even alleged against the owner. The rule is stated in the first paragraph of the syllabus:

"The owner of an apartment house being rented to several tenants with halls and stairways in common owes no common law duty to keep such halls and stairways lighted during the night season."

It was unnecessary for the court to go any further. If there was no negligence on the part of the defendant alleged or proved, the negligence, if any, of the plaintiff, became wholly immaterial. The second paragraph of the syllabus was in a sense therefore predicated on an additional or supplemental reason, though unnecessary one, for sustaining the instructed verdict. The second paragraph of the syllabus is as follows:

"The testimony of a plaintiff, tenant in an apartment house housing several tenants, with halls and stairways in common, that she passed out of her apartment into a hallway in total darkness, with full knowledge of the existence of a stairway leading downward only a few steps from the door of her apartment, and proceeded forward in the direction of such stairway seeking to descend the same and fell to her injury, raises an inference of negligence on her part, which, in the absence of any evidence tending to refute such

inference, justifies the trial court in directing a verdict in defendant's favor.''

It is questionable whether in view of the recent decision of *Williamson Heater Co.* v. *Radich,* 128 Ohio St., 124, 190 N. E., 403, the Supreme Court itself would consider the second paragraph of the syllabus binding upon it. In any event, the facts upon which the second paragraph of the syllabus was based are easily distinguished from those of the present case. The court said on pages 337-338 in the opinion of the *McKinley case:*

''At the trial, the plaintiff testified that when she left her apartment and stepped into the hall and closed the door after her she found the hall very dark. She had put out the lights in her own apartment, and when she stepped into the hall and closed the door after her, which was a self-locker, and instead of again opening her door and lighting her apartment, she proceeded a distance of not less than four feet and not more than fifteen feet, according to the testimony of different witnesses, seeking the newel post at the top of the stairway. Missing the newel post, she was precipitated down the stairway to the landing, where she fell and was injured.''

It was found also that the stairway was not out of repair. While in the instant case the loose strips standing alone as a charge of negligence, in the absence of evidence indicating that they were the cause of a fall, would not be sufficient to prevent an instructed verdict, their presence coupled with the other negligence of the defendants in failing to light the stairs as required by law is at least sufficient in itself to distinguish the application of the *McKinley case.* No failure of duty can be charged against the decedent in the instant case. She had two alternatives, to use the stairs in the prosecution of the errand which she felt required her presence outside the building, or to remain in her daughter's apartment until daylight

supplied the deficiency caused by the failure of the defendants to comply with the law.

We find no justification for holding that as a matter of law she was guilty of contributory negligence, or that the evidence of the plaintiff showed such facts as to raise a presumption of negligence on her part. Other cases cited in support of such a finding we consider inapplicable because of differences in the facts involved.

We are not called upon to decide the question as to whether the jury would have been justified in finding the decedent guilty of contributory negligence, for the reason that they did not so find.

It is claimed that the evidence fails to show that the death in this case was due to the injuries received as a result of the negligence of the defendants. Her death occurred some time after her fall on the stairs. The record contains evidence sustaining a finding that the injuries received by the decedent in her fall on the stairs resulted in her death. This was purely a question of fact for the jury, and we find nothing to justify a contrary conclusion.

The plaintiffs in error have assigned as error the failure to give two special charges. They are as follows:

"If you find that the negligence of the defendants in this case has been proven as alleged, and that such negligence caused the death of Eliza Lee, and that she was free from negligence contributing to her injury and death, then I charge you that it is the law that in such a case the damages which may be recovered are limited to the pecuniary loss sustained by the beneficiaries, and each of them, and do not include such elements as bereavement or mental pain and suffering of the children and next-of-kin, nor the loss of the society or comfort of the deceased. And should you in your deliberations reach a point in fixing the amount of damages which has been sustained by the

death of Eliza Lee, you must further find what amount of pecuniary loss was suffered by Catherine Bickers, by Pearl Lee, by Margaret King, by Grace Miller, by Emma Jump, by Goldie Johnson, or by any of them, *sustained any pecuniary loss.* \* \* \*

"The lump sum of the individual pecuniary losses so found by you shall constitute the sum for which you may return a verdict for the plaintiff in the event that you should so find that she is in any wise entitled to a verdict. \* \* \*

"Now in the measure of damages in a case like this, if you should find for the plaintiff on the issues joined submitted to you, is as follows: It is the pecuniary injury only; that is, the money value of the deceased to her children. You are to compensate these children for the life of their mother. The jury cannot consider the bereavement or the mental or bodily suffering of either said deceased or her children, nor can you allow anything by way of exemplary damages. The sole question for the jury as to damages is what actual pecuniary loss these children have sustained by the death of their mother; and in coming to a conclusion on this matter, the jury may consider the habits of the deceased at the time of her death, whether or not she was an industrious woman, her capacity and ability to work, the aid and help she was to her children and each of them, her age, and for any other circumstances, presented by the evidence, if any; as will aid you in coming to a correct conclusion.

"If you find for the plaintiff, you will award such sum as, in your opinion, said plaintiff is entitled to and insert it in your verdict." .

Each of these charges stated a correct rule of law. The words italicized in the first charge seem to lack some connecting word or phrase, but this whole charge is intelligible and should not have been refused for this defect alone. Support for the law stated in these charges is found in Section 10509-167, General Code,

and in *Wolf, Admr., v. Lake Erie & Western Ry. Co.,* 55 Ohio St., 517, 45 N. E., 708, 36 L. R. A., 812. The refusal to give these special charges constitutes reversible error. *Washington Fidelity National Ins. Co. v. Herbert,* 125 Ohio St., 591, 183 N. E., 537.

In other assignments of error, we find no prejudice to the plaintiffs in error.

The judgment is reversed, and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

HAMILTON, P. J., concurs.

(Decided July 9, 1934.)

ON APPLICATION for rehearing.

BY THE COURT. It has been repeatedly stated by courts that they are not concerned with the wisdom of legislation, and will not substitute their judgments for legislative acts. Only when such lack of wisdom amounts to an unreasonable exercise of legislative authority is interference of the judicial branch of the government justified in the protection of the rights of the citizens.

The effect of the contentions of the defendant in error is that if our construction of Section 10509-167 and Section 10509-168 is correct, these sections are in conflict. Such is not the case. Both sections appear in the chapter containing provisions for the government of executors and administrators. Section 10509-166 provides for an action by or against an executor or administrator for wrongful death.

Section 10509-167 specifically and definitely states that such action must be brought in the name of the personal representative of the deceased person "but shall be for the exclusive benefit of the surviving

spouse, the *children* and other next of kin of the decedent.'' It is further provided that the jury may give such damages as it may think *''proportioned to the pecuniary injury* resulting from such death, to the *persons, respectively, for whose benefit the action was brought.''* (Italics ours.)

If the plain language used in the section needs amplification it is found most fully written out in the case of *Wolf, Admr., v. Lake Erie & Western Ry. Co.,* 55 Ohio St., 517, 45 N. E., 708, 36 L. R. A., 812, where the court says, pages 535, 536 and 537 of the opinion:

''Shortly after the report of the Crawford case, the statute was amended so as to require the jury to give such damages as they may think proportioned to the pecuniary injury resulting from such death to the persons *respectively* for whose benefit such action shall be brought. This word *respectively* requires the jury to assess the damages for the beneficiaries distributively; that is, ascertain how much pecuniary injury each beneficiary singly has sustained, and then bring in a verdict in gross, made up of these single sums combined, the whole not to exceed ten thousand dollars.

''The Standard Dictionary defines the word 'respectively' as follows: 'As singly or severally considered. Singly in the order designated.' Webster defines the word 'As relating to each.' The statute of Wisconsin gives the damages in such cases to the wife or husband, and in their absence to the lineal descendants and ancestors, and the court in construing the statute in *Woodward* v. *Railway Co.,* 23 Wis., 400, say: 'The damages must have been given in reference to the pecuniary injury and loss of the husband alone; and such is the obvious interpretation of the words in the last clause—''with reference to the injury resulting from such death to the relatives of the deceased specified in this section''—which are to be understood distributively, and not collectively, as counsel seem to suppose.' It therefore seems clear that in arriving at

the total amount of damages to be awarded under the statute as amended, the jury should consider the pecuniary injury to each separate beneficiary (not found guilty of contributory negligence), but return a verdict for a gross sum, which sum should be distributed among the beneficiaries not found guilty of contributory negligence. As to beneficiaries found guilty of contributory negligence, no damages should be awarded on their account, and the jury should find in its verdict which, if any, of the beneficiaries were guilty of such contributory negligence. This would no more complicate the trial than is usual in trials for torts, in which it often occurs that some are discharged, and others held liable.

"Take the case at bar, it may be that on the trial when the case gets back into the common pleas it shall appear that the father of the little boy was free from all fault or negligence, and that the mother was guilty of negligence which contributed directly to the death. In such case the jury should assess the damages, if any, which the father has sustained, and return a verdict for that amount only, and award no damages whatever for the benefit of the negligent mother.

"This construction of the statute is borne out by the latter part of section 6135 as to the distribution of the damages recovered. The damages are to be distributed 'by the court making the appointment in such manner as shall be fair and equitable, having reference to the age and condition of such beneficiaries, and the laws of descent and distribution of personal estates.' It can easily be seen that a young child in a helpless condition would sustain a much greater pecuniary loss from the death of a parent, than its brother or sister of mature years, and settled in an ample and comfortable condition in life; and the jury in making up its verdict should assess more damages as to such child, than to its matured brother or sister. The court also would regard it as fair and equitable to

distribute to such child a sum proportioned to the loss by it sustained, having reference to its age and condition as compared with the age and condition of the other beneficiaries.

"It is therefore clear that the statute throughout is distributive in its character, and that the damage should be assessed only for the benefit of those who are not guilty of contributory negligence, and that when recovered the damages should be distributed by the probate court only among such as the verdict of the jury shall show to be entitled thereto. This throws no clog in the way of the prosecution of the action by the administrator, and awards damages to those who are without fault, and does not award those who contributed to the injury."

We can add nothing to the definite clarity of this statement.

Counsel seem to think that because the case involved the application of the claim of contributory negligence to a beneficiary, all else in the opinion is to be discarded as obiter. We consider such position unwarranted by the careful consideration given the interpretation of the words of the statute by the Supreme Court, the very same words and phrases that are herein directly involved.

The point made by the court is that the statute requires the jury to consider the beneficiaries separately, in *seriatim,* each for himself, and to then mass the aggregate of their total losses into one sum in their verdict. Such was the purport of the charges refused. The facts that a subsequent task is allotted to the Probate Court, that it is required to separate and allocate to the beneficiaries their proportionate and respective shares, that the legislature might have carried over the jury's allocation of loss into the Probate Court, that a beneficiary in the Probate Court may have profited when the jury had, in considering his portion of the case, concluded he should not, are all matters

508

which should have concerned the legislature, and which may still be subjects to be presented to it. That the Probate Court may reach a different conclusion under one statute than under another is no reason for vitiating the lawful and manifest purpose of that other.

We retain our conclusion that the charges should have been given, and that error intervened prejudicial to the plaintiffs in error when they were refused.

HAMILTON, P. J., and Ross, J., concur.