### SPELL v. UNITED STATES.

#### Civil Action No. 1124–J.

District Court, S. D. Florida,
Jacksonville Division.

July 23, 1947.

732

Warren & Rothstein, of Jacksonville, Fla., for plaintiff.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., and Damon G. Yerkes, Asst. Dist. Atty., of Jacksonville, Fla., for defendant.

DE VANE, District Judge.

This action brought by plaintiff is to recover damages because of the death of her husband who was killed in an automobile accident on a public highway between Mayport and Atlantic Boulevard, Duval County, Florida, February 16, 1946. Plaintiff claims that her husband came to his death by reason of the negligence of the driver of a Navy bus, operated by the Government, between the Naval Station at Mayport and Atlantic Boulevard. The Government filed pleas of: (1) Not guilty, and (2) contributory negligence on the part of the deceased.

The case was tried by the court without a jury; a jury having been waived by the parties. The testimony introduced at the trial shows that about 11:30 P. M., on the night of February 16, 1946, plaintiff's husband was operating an automobile in a southernly direction along the Mayport road, between Mayport and Atlantic Boulevard. The road between Mayport and Atlantic Boulevard is a well-paved highway approximately twenty feet wide. The accident occurred on a straight stretch of the highway; there being no substantial bend in the road for more than one-half mile in each direction.

There were two other persons in the automobile with plaintiff's husband. These persons testified that an automobile was approaching them from the opposite direction and failed to dim its lights, resulting in plaintiff slowing down his automobile and that at the time of the accident he was traveling somewhere between fifteen and twenty miles per hour.

The Navy bus was traveling in the same direction as was the automobile being operated by plaintiff's husband. The bus driver testified that he was driving at approximately thirty-five miles per hour as he approached the oncoming automobile with the blinding bright lights; that he blinked his own lights two or three times in an effort to induce the driver of the oncoming automobile to also dim his lights, which said driver never did. The bus driver further testified that he reduced his speed to somewhere between twenty-eight and thirty miles per hour as he passed the oncoming automobile and just as he passed this automobile he saw, for the first time, the automobile in which plaintiff's husband was riding loom up about fifteen feet in front of his bus. The bus driver also testified that he never saw the automobile in which plaintiff's husband was riding until after he passed the oncoming automobile. He further testified that plaintiff's husband's automobile had come to a stop on the highway and that he plowed straight into the tail-end of said automobile and drove the front-end of his bus so far into the rear of said

automobile that it took two wreckers to pull the two cars apart.

The constable, who inspected the scene of the accident and took measurements, testified that the distance between the point of impact of the bus with the automobile to the rear-end of the bus, when it came to a stop on the highway, was ninety-seven feet. Stated another way, the bus traveled from the point of impact to the point where it came to a stop, a distance of ninety-seven feet, plus the length of the bus. The body of plaintiff's husband was thrown from the automobile in which he was driving and was found on the highway approximately even with the rear-end of the bus. The two passengers riding in automobile being operated by plaintiff's husband and the driver of the bus testified that while the night was misty visibility extended for at least two hundred feet, with the use of headlights.

The only conflict in the testimony as to the accident is the testimony of Mr. Singleton and his son, who were passengers in the automobile with plaintiff's husband, that plaintiff's husband was driving between fifteen and twenty miles per hour at the time of the accident and the testimony of the bus driver that plaintiff's husband had brought his automobile to a standstill on the highway at the time of the accident.

The bus driver testified that at the time he passed beyond the bright lights of the oncoming automobile being operated by plaintiff's husband was only fifteen feet in front of his bus and that due to the bright lights of the oncoming automobile he never saw the automobile being operated by plaintiff's husband until he was that distance from said automobile. The time took the bus driver to travel fifteen feet, traveling at the rate of twenty-eight or thirty miles per hour just wasn't sufficient for him to be certain whether the automobile in front of him was moving or stationery. In addition, as every driver of an automobile knows, when one passes another automobile at night, where the driver of the oncoming car refuses to dim his lights, that the bright lights of the oncoming automobile has some effect upon his vision, which requires some seconds to overcome.

■■ The law of Florida makes it the duty of anyone operating an automobile on the highway at night to stop his car if he cannot see another automobile on the highway ahead of him, going in the same direction, because of the bright lights of an approaching car; and where the driver of such car fails to do so and by such failure has a collision with the automobile in front of him he is guilty of negligence and liable in damages. See Mathers v. Botsford, 86 Fla. 40, 97 So. 282, 32 A.L.R. 881. The facts in this case fall squarely within the holding of the Supreme Court of Florida in the above case. See also, Brandt v. Dodd, 150 Fla. 635, 8 So.2d 471. The law of Florida as to negligence is controlling in this case. See 28 U.S.C.A. § 931.

■ The court holds upon the facts in this case that defendant's agent (the bus driver) was guilty of negligence and plaintiff's husband was not guilty of contributory negligence and that defendant is liable in damages to plaintiff for the death of her husband, resulting from the accident.

### Measure of Damages

The evidence in this case shows deceased left, surviving him, a widow and three small children. Deceased was thirty-two years of age at the time of his death. Evidence shows he was earning approximately $55 per week. According to the mortality table introduced in evidence, he had a life-expectancy of slightly more than thirty-three years.

■■ Neither defendant nor plaintiff submitted any evidence as to the anticipated earnings of plaintiff's husband during his life-expectancy or as to the trend of wages and prices during said period. Evidence shows that plaintiff's husband was an employee of a fish house at Mayport. It is common knowledge that wages for unskilled labor, such as that being performed by plaintiff's husband at the time of his death, were and for some years prior thereto, much higher than may be expected during normal times and the life-expectancy of the deceased. The court is, therefore, unwilling to determine damages based primarily upon a calculation of the earnings of the deceased at the time of his death, extended over his life-expectancy.

Taking into consideration the earning capacity of plaintiff's husband; the nature

734

of the work performed by him; the three small children for whom he would have been responsible until they reached maturity and which has now been shifted to plaintiff; and the loss of comfort, protection and society of her husband by plaintiff; the marital relations, character, habits and conduct of the deceased, as shown by the evidence, and all other material matters that should be given weight and consideration, the court assesses damages in favor of plaintiff and against defendant in the sum of $15,000.

The Act of Congress, 28 U.S.C.A. § 944, under which this suit was brought, requires the court to determine the amount of attorney's fee to be paid plaintiff's attorney out of the award to her. When informed by the court of the maximum amount of attorney's fee allowed by the statute, plaintiff requested the court to allow an attorney's fee of twenty percent, and a fee of what that percentage is allowed plaintiff's attorney.