**HEATH v. UNITED STATES.**
Civ. No. 624.

United States District Court
N. D. Alabama, E. D.
July 28, 1949.

Merrill, Merrill & Vardaman, Anniston, Ala., for plaintiff.

John D. Hill, United States Attorney, W. R. Bradford, Assistant United States Attorney, Birmingham, Ala., for defendant.

LYNNE, District Judge.

When a judge is confronted by a factual situation in which his sense of inherent justice seems to be at war with his appreciation of the applicable law, it behooves him to proceed with more than ordinary caution. Strained construction, the device of the judge who seeks to reconcile legal logic with his individual concept of natural right and wrong, first begets, then multiplies confusion.

On May 8, 1948, in the City of Anniston, Alabama, within this district, Private Frisco Frison, a soldier in the Army of the United States, while driving an ambulance in a convoy of military vehicles and while acting for the defendant within the scope of his office or employment, negligently drove such ambulance onto or against the motor scooter on which Andrew P. Heath, Jr. was riding, thereby proximately causing his instantaneous death. This action to recover damages for such wrongful death was instituted by plaintiff, as administratrix of the estate of said decedent, who invoked the jurisdiction of this court under the provisions of Section 1346, Title 28 U.S. C.A.

The death of plaintiff's intestate having been caused by an act of defendant's agent which occurred within the State of Alabama under circumstances imposing liability upon the defendant, it is clear that plaintiff is entitled to recover actual or compensatory damages, in lieu of punitive damages,[1] to which her recovery would have been confined if her action had been against a private individual and not the United States.[2]

The Alabama Homicide Act[3] is controlling as to the capacity of the party who may maintain a suit for wrongful death and upon the determination of the

---

[1] "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

"If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof." Title 28, Section 2674, U.S.C.A.

[2] "Without question the damages recoverable under the homicide statute (of Alabama) are punitive as distinguished from actual or compensatory damages." Hampton v. Roberson, 231 Ala. 55, 58, 163 So. 644, 646; Parker v. Fies & Sons, 243 Ala. 348, 10 So.2d 13; 15 American Jurisprudence, p. 397.

[3] "A personal representative may maintain an action, and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama, and not elsewhere for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such

persons for whose benefit the action is brought. But neither it nor the decisions construing it shed any light upon the issue of recoverable damages. When the Federal Tort Claims Act was amended to provide for the recovery of actual or compensatory damages in death actions based upon acts occurring within the two states whose laws limited recovery to punitive damages, the Congress, sensitive to the inequity resulting from the peculiar provisions of the Alabama and Massachusetts statutes, was required to define the measure of actual or compensatory damages recoverable or to permit the recovery of punitive damages against the sovereign which was expressly proscribed in the original act.[4]

It is quite obvious that the Congress did not elect to relax the bar against the recovery of punitive damages so as to permit their recovery only in actions for wrongful death against the Government caused by acts occurring within these two states. It is equally apparent that the laws of the other forty-six states were considered entirely adequate to deal with the question of actual or compensatory damages in conformity with the express legislative intent to visit liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Sec. 1346(b), Title 28 U.S.C.A.

wrongful act, omission, or negligence, if it had not caused death. Such action shall not abate by the death of the defendant, but may be revived against his personal representative; and may be maintained, though there has not been prosecution, or conviction, or acquittal of the defendant for the wrongful act, or omission, or negligence; and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions. Such action must be brought within two years from and after the death of the testator or intestate." Title 7, Section 123, Code of Alabama, 1940.

4 "The Committee on the Judiciary, to whom was referred the bill (H.R. 3690), to amend the Federal Tort Claims Act, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

"The necessity for this legislation arises from the finding that the wrongful death statute and decisions thereunder of Alabama and Massachusetts are in conflict with the Federal Tort Claims Act in the Reorganization Act of 1946 with the result that the legal successors of decedents in those two States are deprived of a remedy.

"Under the Federal Tort Claims Act a claim for a death caused by the wrongful act of a Government employee shall be brought in the United States district court for the district where the wrongful act occurred and the United States is expressly relieved from liability for punitive damages.

"Each case is determined in accordance with the law of the State where the death occurred.

"The Alabama statute has been interpreted to allow the recovery of punitive damages only. The Massachusetts statute has been clearly defined by the courts of that State as being punitive in its nature.

"The result of this conflict of laws has been that the Department of Justice has moved for the dismissal of death claims brought in both these States under the Federal Tort Claims Act on the theory that the purpose of the act was to compensate for the loss actually suffered rather than for the culpability involved in the tort committed.

"It seems clear that it was never intended by the Congress that any such inequity should be caused by the operation of the act and this bill is proposed to remove that inequity.

"This bill simply amends the Federal Tort Claims Act so that it shall grant to the people of two States the right of action already granted to the people of the other 46.

"This bill, with the committee amendment, will not authorize the infliction of punitive damages against the Government, and as so amended, it is reported favorably by a unanimous vote.

"Its passage will remove an unjust discrimination never intended, but which works a complete denial of remedy for wrongful homicide." Comment, U. S. Congressional Code Service, 80th Congress, First Session, 1947, pp. 1548, 1549, House Report No. 748, June 30, 1947.

■ There is no conceivable basis for an insistence that the amendment purported to establish a new measure of damages applicable to all actions against the United States for wrongful death irrespective of the law of the place where the act or omission occurred. On the contrary, it is crystal clear that the Congress merely substituted actual or compensatory damages for punitive damages, insofar as the laws of Alabama or Massachusetts should obtain, and, in simple, concise and unambiguous language, defined the measure of such substituted damages.

This is a case of novel impression. Reported cases dealing with damages recoverable against the United States for wrongful death are of little help; all were dealing with "the law of the place" which permitted the recovery of compensatory damages.[5] Therefore, a review of the procession of statutory and decision law, inaugurated by the adoption of Lord Campbell's Act in 1846 (9 & 10 Vict. c. 93), which marked a departure from the classical concept that in an action of tort damages were not recoverable by any one for the death of a human being, Van Beeck v. Sabine Towing Co., 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685, is of more than academic interest.

The impetus provided by Lord Campbell's Act overcame the inertia of both state and federal governments and their legislative bodies were quick to express their dissatisfaction with the archaisms of the law by the enactment of death statutes which embraced the outline, if not the precise details, of their English predecessor.

It was inevitable that there should be lack of uniformity in the language employed in the statutes of the several states and the definitive treatment by their courts of the nature and boundaries of the measure of recovery provided thereby.

In the several states the statutes and interpretive decisions fall within two broad categories.[6] One contemplates a recovery for the pecuniary loss resulting to the estate of the decedent from his death; the other for the ascertainable pecuniary loss sustained by the surviving relatives or dependents of the deceased. While the distinction may involve no difference under the facts of one case, it may be of vital, practical and controlling importance in a factual situation such as is presented in the case at bar.

Plaintiff contends for a construction of the second paragraph of Section 2674, Title 28, U.S.C.A., which would require compensation in this case to be measured by the loss to his estate occasioned by the death of decedent. By way of analogy, she relies upon an extensive quotation from McAdory v. Louisville & N. Railroad Company, 94 Ala. 272, 10 So. 507. I cannot agree. That case arose under the Alabama Employers' Liability Act which concededly has no controlling application here.

■ It is my opinion that the damages recoverable by plaintiff in this case must be measured by the pecuniary loss which the evidence shows was sustained by the persons for whose benefit this action was brought.

The language of the act involves no uncertainty in this regard. It is strikingly

[5] Spell v. United States, D.C.S.D.Fla., 72 F.Supp. 731; Wilscam et ux v. United States, D.C.Hawaii, 76 F.Supp. 581; Van Wie v. United States, D.C., 77 F.Supp. 22; Barnett v. United States, D.C.N.D.Fla., 78 F.Supp. 186; Potts v. United States, D.C., 78 F.Supp. 833.

[6] "The amount of recovery for the death itself is determined by one of two theories of compensation That followed in most jurisdictions is a prototype of Lord Campbell's Act, which measures recovery by the loss to the surviving relatives of the deceased. The other view measures compensation by the loss to the estate, which is considered to be the value of the earnings and savings which the estate would have made but for the wrongful death. Under the latter theory, some states fix damages as the present value of the probable earnings of the deceased, less his probable personal expenditures. These damages clearly resemble those given on the basis of loss to surviving relatives, but a variance occurs where the deceased did not live at home and probably would not have supported his family, or where the deceased was a child." Harvard Law Review, Vol. LXI (1947–48), page 167.

similar to that used in the second section of Lord Campbell's Act,[7] in obedience to which the English courts have consistently held that compensation must be based on the amount of actual pecuniary benefit which the plaintiffs might reasonably have expected to enjoy had the deceased person not been killed.[8] It is significantly consistent with the theory of compensation contained in the Federal Employers' Liability Act [9] which the Supreme Court has said is essentially identical with the first act which ever provided for a cause of action arising out of the death of a human being.[10]

That language is clearly repugnant to the construction for which plaintiff must contend. For example, the use of the word "respectively"[11] to modify the word "persons," which immediately precedes it is of more than casual significance. Strongly persuasive is the use by the Congress of the plural "pecuniary injuries" in defining the loss for which compensation is recoverable. It indicates that there was contemplated a single recovery for several injuries and is equivalent to the terminology of the statutes and decisions of those jurisdictions which measure the recovery in such actions by the several losses to the surviving relatives of the deceased. If loss to the estate had been intended as the measure of recovery, the use of the plural, where the use of the singular would have been accurate, would have been inapt.

Adverting to the death statutes of the forty-six states which provide for the recovery of compensatory damages [12] it

[7] "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding such death," etc.

The second section provides that,—

"Every such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought." 9 & 10 Vict., c. 93 (1846).

[8] Royal Trust Co. v. Canadian Pacific Rail. Co. (1922), 38 T.L.R. 899, P.C.; Taff Vale Rail Co. v. Jenkins (1913), A.C. 1;

Pym v. Great Northern Rail. Co. (1862), 2 B. & S. 759;

Halsbury's Laws of England, Second Edition, Vol. 23, page 695.

[9] Sec. 59, Title 45 U.S.C.A.

[10] Michigan Central R. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417, Ann.Cas.1914C, 176.

[11] In Theberath et al. v. The Celluloid Manufacturing Co., C.C., 3 F. 143, at page 148, the court gives the following definition: "The obvious and most usual meaning of the word respectively is 'as relating to each.' "

Pertinent portions of the Death Statute of Ohio relating to damages are similar to portions of the Tort Claims Act as amended. The case of Wolfe v. Lake Erie & W. Ry. Co., 55 Ohio St. 517, 45 N.E. 708, 711, 36 L.R.A. 812, discusses the interpretation of the word "respectively" as it applies to beneficiaries under that Act. The court says: "This word 'respectively' requires the jury to assess the damages for the beneficiaries distributively; that is, ascertain how much pecuniary injury each beneficiary singly has sustained, and then bring in a verdict in gross, made up of these single sums combined, the whole not to exceed $10,000. The standard dictionary defines the word 'respectively' as follows: 'As singly or severally considered; singly in the order designated.' Webster defines the word, 'As relating to each.' * * * It therefore seems clear that, in arriving at the total amount of damages to be awarded under the statute as amended, the jury should consider the pecuniary injury to each separate beneficiary (not found guilty of a contributory negligence), but return a verdict for a gross sum, which sum should be distributed among the beneficiaries not found guilty of contributory negligence." The above definition is quoted in detail in Wartik v. Miller, 48 Ohio App. 494, 194 N.E. 433. The case of Ulman v. Manheimer, 6 Cir., 249 F. 691, at page 695, refers to Wolfe v. Lake Erie Co., supra, for definitions and constructions of "respective" or "respectively."

[12] Collected under General Note on

is at once apparent that the language of the Ohio statute [13] strikingly resembles that of the federal act. The Ohio courts have uniformly held that compensation recoverable under their act is to be measured by the loss to the survivors and not by the loss to the estate.[14]

Having decided upon the theory of compensation which should be applied, the court, as the trier of facts, next turns its attention to the intrinsically perplexing task of admeasuring the damages, of which the evidence affords some proof. Logically, there must first be a determination of the persons who may have sustained compensable losses. Stating the proposition in terms of interrogation, for whose benefit was this action brought? As indicated hereinabove, this question may be answered only by resorting to the Alabama Homicide Act, in the first instance. Title 7, Section 123, Code of Alabama, 1940. Permitting the action to be maintained by the personal representative, it provides that the damages recovered therein must be distributed according to the statute of distributions, i. e., as personalty of an estate is distributed.[15]

By referring to the Alabama Statutes of Descent and Distribution, and more specifically to Sections 10, 1, and 4 of Title 16, Code of Alabama, 1940, it follows that this action was brought for the benefit only of three grandparents of the decedent.[16]

The empirical processes involved in the mensuration of damages at best may achieve but an approximation of the actual loss. In a case of this kind, inflexable formulae are impossible of statement. However, when presented, the problem must be faced and not avoided because of its complexity. From the numerous opinions of courts of other jurisdictions,[17] the expressions of the Supreme Court in cases arising under the Federal Employers' Liability Act [18] and the treatment of the proposition by the Ohio Courts in cases

---

Statutes, page 366, McCormick on Damages.

[13] The Ohio Wrongful Death Statute, Section 10509-167, Throckmorton's Ohio Code Anno.1940 (1), provides as follows:

"An action for wrongful death must be brought in the name of the personal representative of the deceased person, but shall be for the exclusive benefit of the surviving spouse, the children, and the other next of kin of the decedent.

"The jury may give such damages as it may think proportioned to the pecuniary injury resulting from such death, to the persons, respectively, for whose benefit the action was brought."

[14] Karr v. Sixt, 146 Ohio St. 527, 67 N.E.2d 331; Greer v. Board of Commissioners of Knox County, 33 Ohio App. 539, 169 N.E. 709; Cincinnati Street Railway v. Altemeier, 60 Ohio St. 10, 53 N.E. 300.

[15] Fischer v. Pope, 229 Ala. 170, 155 So. 579; McWhorter Transfer Co. v. Peek, 232 Ala. 143, 167 So. 291.

[16] The deceased left surviving him no children or their descendants, no father or mother, no brothers or sisters or their descendants, no wife, and only three grandparents as his next of kin. Plainly, a stepmother is not embraced within the category of distributees.

[17] See Annotation beginning 7 A.L.R. 1314 and subsequent Annotation beginning 163 A.L.R. 253;

See Annotation beginning 74 A.L.R., p. 11, at p. 15 and continuing on p. 16.

[18] From Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 196, 57 L.Ed. 417, Ann.Cas.1914C, 176, the following is quoted:

"The word 'pecuniary' did not appear in Lord Campbell's Act, nor does it appear in our act of 1908. But the former act and all those which follow it have been continuously interpreted as providing only for compensation for pecuniary loss or damage.

"A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, 'not only to express the character of that loss to the beneficial plaintiffs which is the foundation of their right of recovery, but also to discriminate between a material loss which is susceptible of a pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation.' Patterson, Railway Acci. Law, § 401.

"Nevertheless, the word as judicially adopted is not so narrow as to exclude damages for the loss of services of the husband, wife, or child, and, when the beneficiary is a child, for the loss of that care, counsel, training, and education which it might, under the evidence, have reasonably received from the parent, and

brought under their similar statute,[19] the pattern of the elements of damage, in terms of pecuniary injuries to surviving relatives, gradually emerges, though but seen "through a glass darkly."

■■ "The law fixes the burden upon him who claims damages from another as a compensation for a pecuniary loss to furnish the facts necessary to ascertain the extent of his loss with reasonable certainty, which can only be supplied by the service of another for compensation.

"In Tilley v. Hudson River Railroad, 24 N.Y. 471, and 29 N.Y. 252, 86 Am.Dec. 297, the court stated that 'the word "pecuniary" was used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though most painful and grievous to be borne, cannot be measured or recompensed by money. It excludes, also, those losses which result from the deprivation of the society and companionship, which are equally incapable of being defined by any recognized measure of value.' "

[19] The following language is quoted from Karr v. Sixt, 146 Ohio St. 527, 67 N.E.2d 331, 335:

"From a further consideration of Section 10509-167, General Code, it is noted that damages for the wrongful killing of a person are limited 'to the pecuniary injury resulting from such death.' In Black's Law Dictionary, 3d Ed., 1343, 'pecuniary loss,' as the term relates to dependents, is defined as 'the reasonable expectation of pecuniary benefit from the continued life of the deceased, to be inferred from proof of assistance by way of money, services, or other material benefits rendered prior to death.'

"And in 16 American Jurisprudence 122, Section 182, the statement is made: 'The word "pecuniary," where it occurs in death statutes, is not used in a sense of the immediate loss of money or property. It looks to prospective advantages of a pecuniary nature which have been cut off by the premature death of the person from whom they would have proceeded.' See, also, 13 Ohio Jurisprudence 501, Section 144; Davis v. Guarnieri, 45 Ohio St. 470, 481, 15 N.E. 350, 356, 4 Am. St.Rep. 548, 552; 12 Am.St.Rep., note beginning at page 375.

"Of course, 'pecuniary loss' does not comprehend 'such elements as bereavement, or mental pain and suffering of the beneficiaries, or the loss of the society or comfort of the deceased.' Kennedy, Adm'r v. Byers, 107 Ohio St. 90, 140 N.E. 630."

The following quotation is taken from Cincinnati Street Railway v. Altemeier, 60 Ohio St. 10, 53 N.E. 300, 301:

"But how shall this pecuniary injury to the survivors be ascertained and measured by the jury? Manifestly, it must be determined by the jury from the evidence in the case, and not merely by guess. Such facts should be established in the case by evidence as will enable the jury to fix the amount of the pecuniary loss to each person entitled to share in the recovery, and the jury should confine the verdict to the amount of loss so proven. To warrant a recovery at all, it must be shown by evidence that, in the usual course of events in life, the beneficiary would have received financial aid from the deceased had he lived, and the approximate amount of such aid. This may be shown by evidence tending to prove that in the lifetime of the deceased he supplied aid, support, or financial assistance to the beneficiary, and would likely have continued to do so in the future had he lived. The relation of the deceased to the beneficiary may also be shown, and his disposition and good will towards him, as likely to result in gifts or inheritances, and to that end his age, health, and ability to make and save money may be shown. Grotenkemper v. Harris, 25 Ohio St. 510. It may also be shown that the beneficiary is in such financial circumstances and health as to need the aid of the deceased, coupled with the fact that such aid was to some extent supplied during the life of the deceased, and a reasonable expectation, under the circumstances, that such aid would continue in the future. In the case of parents, it may be shown that they were in circumstances and health requiring that the deceased child should aid them by his services, not only during minority, but thereafter. In such cases, the financial circumstances and health of the parents are very important, because a parent in poor circumstances would likely be compelled to depend largely upon his minor children for support, while a rich parent would receive no financial aid from his minor children, and, on contrary, would find them a financial burden upon his hands. A rich parent, whose child is a continued financial expense to him, and who has no reason to expect financial aid from such child, sustains little, if any, pecuniary injury from its death, beyond the funeral expenses; while a poor parent, and especially if in bad health, might reasonably expect substantial aid from his child, not

and, failing in this, he is entitled to no more than nominal damages."[20] Nominal damages, in this case, would be six cents, or other "inconsiderate" sum.[21]

Turning to the evidence on this point, it may be concisely summarized as follows: Plaintiff's intestate was eighteen years of age at the time of his death; he had never married; his mother and father had predeceased him and he had had no brothers or sisters; he lived with his stepmother, who qualified as the administratrix of his estate and who brought this action; he was a senior in high school, where he had made outstanding athletic and average scholastic records; he was sober, industrious, and frugal, and bore an excellent reputation among all who knew him in the community in which he lived; he was not regularly employed in a gainful occupation at the time of his death, but occasionally worked at the local Y. M. C. A., for which he received from thirty to forty-five cents an hour except that on occasions he was paid at the rate of two to two and one-half dollars for each game he supervised; at some indefinite period not immediately prior to his death, he received a wage of ten dollars per week while working at a soda fountain maintained by the local U. S. O.; his surviving next of kin consisted of a paternal grandmother, age eighty-three, and a maternal grandfather and grandmother, who were in their "early seventies."

There was no evidence tending to prove that in the lifetime of the deceased he supplied aid, support, or financial assistance to either grandparent, none showing that either grandparent was in such financial circumstances and health as to need the aid of the deceased; in short, there was no evidence offered from which the court could draw a fair and reasonable inference that, in the usual course of events in life, either grandparent would have received any financial aid from the deceased had he lived.

█ There remains the item of funeral expenses, in the amount of $442.70 They were paid by the plaintiff individually. It has been demonstrated that this action was not brought for her benefit. Neither grandparent contributed to their payment, nor was he under any legal obligation to do so. They are not recoverable as damages in this case.[22]

█ It is my opinion that plaintiff is entitled to a judgment against the defendant, but to recover only nominal damages of one dollar.

Judgment will be presented and entered in conformity with this opinion.

---

only during its minority, but for years thereafter.

"The jury should be governed by the circumstances of each case as shown by the evidence, and return a verdict for such an amount as the evidence shows the reasonable pecuniary loss to be, and, if no pecuniary loss is proven, the verdict should be for the defendant."

[20] Seaboard Manufacturing Co. v. Woodson, 98 Ala. 378, 11 So. 733, 736.

[21] Howard v. Taylor, 99 Ala. 450, 13 So. 121.

[22] Dalton v. South-Eastern Rail. Co. (1858), 4 C.B. (n. s) 296, 140 English Reports, p. 1098.

It should be noted that pursuant to Law Reform Act, 1934 (24 & 25 Geo. 5, c. 41), s. 2(3), funeral expenses may be included in a recovery if incurred by the parties for whose benefit the action is brought.

See the following Alabama cases: Holt v. Stollenwerck, 174 Ala. 213, 56 So. 912; White v. Ward, 157 Ala. 345, 47 So. 166, 18 L.R.A.,N.S., 568; Kuykendall v. Edmondson, 205 Ala. 265, 87 So. 882.