The son of the plaintiff, who was named Bub Raines, was employed by the defendant as a member of the section crew on its line (191) between Asheville, N.C. and Spartanburg, S.C., and at the time of the accident he had been sent out to flag an approaching train. In attempting to do so, he was struck by the train and killed. At the time he was between 15 and 16 years old. With reference to his contributory negligence the court instructed the jury as follows: "If he sat down near the track in a dangerous position — if you find he thought that he was far enough away — if he put himself in a perilous position on the railroad track, and he was killed, the court charges you that he would be guilty of contributory negligence, and it would be your duty to answer the second issue `Yes.'"
Upon the third issue, as to damages, the court charged the jury as follows: "There is no presumption in law that Bub Raines would have contributed to the support of his father after he arrived at the age of 21 years, and the burden is on the plaintiff to satisfy the jury by the greater weight of the testimony that he would have continued to contribute to the support of his father after he arrived at the age of 21 years; and the burden is also upon the plaintiff to satisfy the jury as to the amount of the contribution he would have made to his father after arriving at the age of 21 years, and unless the jury are satisfied by the greater weight of the testimony that he would have contributed to the support of his father after reaching the age of 21 years, then the jury could only award in this case, if they come to the issue of damages, the present value of such contributions as you find from the evidence Bub Raines would have made to his father from the time he was killed until he reached the age of 21 years."
Exceptions were duly taken to these instructions and each of them.
The jury returned the following verdict:
1. Was the plaintiff's intestate, Bub Raines, killed by the negligence of the defendant Southern Railway Company, as alleged in the complaint? Answer: "Yes."
2. Did the plaintiff's intestate, Bub Raines, by his own negligence, contribute to his death, as alleged in the answer? Answer: "Yes."
3. What amount, if any, is the plaintiff entitled to recover? Answer: "$192."
Judgment was entered thereon, and plaintiff appealed.
After stating the case: The charge as to contributory negligence and damages was erroneous. If the plaintiff was young and inexperienced, and was not provided with the means of giving the signal, with due regard to his own safety, and by reason thereof he was killed while in the exercise of that degree of care for his own protection which a person of his age, intelligence, and experience would ordinarily (192) have given under the circumstances, he would not be guilty of contributory negligence. Ensley v. Lumber Co., 165 N.C. 687;Alexander v. Statesville, 105 N.C. 527. In the case last cited we said: "The rule of law in regard to the negligence of an adult and the rule in regard to that of an infant of tender years is quite different. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. If he fails to give it, his injury is the result of his own folly, and cannot be visited upon another. Of an infant of tender years less discretion is required, and the degree depends upon his age and knowledge. Of a child of 3 years of age less caution would be required than of one of 7; and of a child of 7, less than of one of 12 or 15. The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of that case," citing Murray v. R. R.,93 N.C. 92; Bottom v. R. R., 114 N.C. 699; R. R. v. Galdman, 15 Wall. (U.S.), 401; R.R. v. Stout, 17 Wall. (U.S.), 657; Morgan v. R.R.,38 N.Y., 455; Sh. and Redf. on Neg., sec. 49, and other authorities. All that is required of an infant is that he exercise care and prudence equal to his capacity. Robinson v. Cone, 22 Vt. 213. Examined in the light of this rule, the instruction as to contributory negligence was too broad, and should have been restricted to its proper limits. If the decedent was standing too near the track, or at a place near the track which brought him within the zone of danger, and his exposure to injury was not the result of any failure to exercise that degree of care which one of his age and knowledge would have taken for his safety under the circumstances, his act would not necessarily be contributory negligence. He was not an intruder or "license," within the rule of some of the cases cited by appellee. If a person places himself on a track in front of a moving train, or too near thereto for safety, and does so willfully or designedly or negligently, he must take the consequences; but where the act was not willful (and it was not so in this case), it must have been negligent in order to authorize a finding of contributory fault on his part, and the negligence must have been the proximate cause of the injury. The court excluded this question of negligence from the consideration of the jury when it gave the instruction that "If he sat near the track in a dangerous position — if you find that he thought that he was far enough away, . . . it would *Page 244 
be your duty to answer the second issue `Yes.'" The alternative proposition, that "if he put himself in a perilous position on the railroad track" it would be contributory negligence, if it was correct, did not cure the error, as we cannot tell by which branch of the instruction the jury were guided to their verdict. Tillett v. R. R., 115 N.C. 662;Williams v. Haid, 118 N.C. 481; Edwards v. R. R., 129 N.C. 78. An error in the charge must be eliminated by a retraction (193) of it, or a proper explanation, which will remove the wrong impression made by it, and the giving of another correct but conflicting instruction does not answer the purpose, as it does not produce the desired result. If the deceased had fallen asleep on the track, his negligence in doing so would not be contributory, in a legal sense, unless it was the proximate cause of the injury to him; and yet the court charged the jury, in effect, that it would be. If, notwithstanding his negligence in sleeping on the track, the defendant's engineer, after he saw him lying there and became aware of his perilous situation, could, by exercising the proper care, have stopped the train in time to avoid the injury, and failed to do so, his negligence in not doing so would be considered as the proximate cause of intestate's death. The Federal Employer's Liability Act does not, as we understand it, change the rule of law as to what is contributory negligence, except as to its legal effect upon the issue as to damages, an affirmative finding in respect of such negligence reducing the amount of damages as indicated in the act.
We are also of the opinion that there was error in the instruction of the court in regard to the measure of damages, and as the question may be again raised, we will now decide it. The intestate, at the time of his death, was employed in interstate commerce, and the case was, therefore, properly tried under the Federal Employers' Liability Act. With respect to damages, the court instructed the jury that the burden was on the plaintiff to satisfy the jury that the intestate would have continued to contribute to the support of his father after he arrived at the age of 21 years, and further, that he must satisfy them as to the amount of such contribution as he would have made after his maturity. This could hardly be the rule intended by Congress, as such facts would be incapable of anything like accurate or even approximate proof. They depend so much upon contingencies as to be beyond the human ken. We cannot foretell what a man will do with his estate in the future, and therefore Congress, aware of this difficulty in making proof, required that the amount of recovery should be measured by the reasonable expectation of benefit which would accrue to the parent, or a dependent, by the continuance of the life in question. We think this part of the charge, in its general scope and tendency, was not in accordance with *Page 245 
the correct principle to be gathered from the evident meaning and purpose of the act, and we have already so decided. Here the intestate was under no obligation to support and maintain his father. 29 Cyc., 1619. What he might do for him, in that way, would be voluntary on his part — a mere gift or gratuity, prompted, it is true, by filial devotion or duty, but nevertheless a moral and not a legal obligation. Dooley v. R. R.,163 N.C. 454. We said in that case, quoting from and approving the language of Justice Pollock in Franklin v. R. R., 4 Hurl. and Norman, 511: "If, then, the damages are not to be (194) calculated on either of these principles, nothing remains except that they should be so calculated in reference to a reasonable expectation of pecuniary benefits, as of right or otherwise, from the continuance of the life. Whether the plaintiff had any such reasonable expectation of benefit from the continuance of his son's life, and if so, to what extent, were the questions left in this case to the jury. The proper question then was left, if there was any evidence in support of the affirmative of them. We think there was. The plaintiff was old and getting infirm; the son was young, earning good wages, and apparently well disposed to assist his father, and in fact he had so assisted him to the value of 3s, 6d. a week. We do not say that it was necessary that the actual benefit should have been derived; a reasonable expectation is enough, and such reasonable expectation might well exist, though, from the father not being in need, the son had never done anything for him." Again, this Court says in theDooley case: "A person entitled to the benefit of the action may recover damages for the loss of a pecuniary benefit to which he was not legally entitled, but which it is reasonably probable he would have received except for the death," citing Tiffany on Death by Wrongful Act (2 Ed.), sec. 159. Mr. Tiffany has classified the losses which may be considered in assessing the damages, and the persons entitled to be compensated therefor. The first description of loss is principally confined to a husband's loss of his wife's services, a wife's loss of her husband's support and services, a parent's loss of the services of a minor child, and a minor child's loss of the support of a parent. But the statutes do not confine the benefit of the action to husbands, wives, minor children and parents of minor children. The second description of loss includes the loss by the beneficiary of any pecuniary benefit which he might reasonably have expected to receive during the lifetime of the deceased by gift, and also the loss of any accumulations which it is probable that the deceased would have added to his estate had he lived out his natural life, and which the beneficiary would probably have received by inheritance. He then proceeds to say: "Thus the second description of loss may be divided into (1) losses *Page 246 
of prospective gifts, and (2) losses of prospective inheritance. The loss sustained by a husband, wife, minor child and a parent of a minor child may be of both descriptions. The loss sustained by an adult child, parent of an adult child, or collateral relative, can only be of the latter description." We approved this elucidation of the act in Dooley's case, in which Justice Allen so fully and clearly explains this new law, and cited in support of Mr. Tiffany's statement the following cases: Greenwood v.King, 82 Neb. 22; Hillebrand v. Stans. Bisc. Co., 139 Cal. 236;Duckman v. R. R., 237 Ill. 108; R. R. v. Kindood, 57 Tex. 498[57 Tex. 498]; Hopper v. R. R., 155 Fed. Rep., 277. The (195) case last cited was much like this one. The action was there brought by a father for loss by the death of his daughter, who was killed by the negligence of the defendant in that case. She had not contributed anything to her father's support, nor had she rendered any appreciable service to him. He had, on the contrary, been at considerable expense in supporting, maintaining, and educating her. Judge Van Devanter, then circuit judge, now a justice of the Supreme Court of the United States, said in regard to the father's right to damages: "Considering this evidence, in the light of the natural influence or promptings of filial ties, we think it would have sustained a finding that there was a reasonable expectation of substantial, though not large, pecuniary benefit to the father from a continuance of the life of the daughter," citing several cases to sustain his view. It may here be remarked that the Dooleycase presents facts in almost exact analogy to those we are now considering, as it was an action by the father for loss sustained by the death of his son. In this case it appears that the intestate was a boy in good health, earning $1.10 per day, and was contributing regularly to the support of his father. He was sober, industrious, and of average intelligence for his age. His conduct towards his parent tended to show that he was, in mind and disposition, imbued with a proper conception of his filial duty and entertained the proper affection for his father. The evidence in this case of a reasonable expectation by the father of benefit or pecuniary aid or other advantage of gift or inheritance, if the life of his son had been spared to him, was sufficient for submission to the jury.
Before closing this opinion, we must advert to the recent case of Irwinv. R. R., 164 N.C. 5, where it is said: "We held in Dooley v. R. R.,163 N.C. 454, that an action may be maintained under the Federal statute in behalf of a parent when there is a reasonable expectation of pecuniary benefit from the continuance of the life of the child, although the child has not contributed to the support of the parent, and the authorities which support this principle also hold that evidence of contributions by the child to the support of the parent is material and important in *Page 247 
determining whether such reasonable expectation exists, and in the assessment of damages which may be recovered, and if such evidence is material and competent for the parent, the defendant may prove the contrary." That case sustains our conclusion, that the instruction as to damages was erroneous and was in harmony with what is thus said in Am. R.R. Co. v. Didricksen, 227 U.S. 145: "The cause of action which was created in behalf of the injured employee did not survive his death, nor pass to his representatives. But the act, in case of the death of such an employee from his injury, creates a new and distinct right of action for the benefit of the dependent relatives named in the statute. The damages recoverable are limited to such loss as results (196) to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee. The damage is limited strictly to the financial loss thus sustained." And the case of R. R. v. McGinnis, 228 U.S. 175, is to the same effect. We think that the law is unquestionably settled by those decisions, as to the measure of damages under the Federal act.
New trial.
Cited: West v. R. R., 174 N.C. 127; Mullinax v. Hord, 174 N.C. 615;Waldo v. Wilson, 174 N.C. 627; Vanderbilt v. Chapman, 175 N.C. 14; Fry v.Utilities Co., 183 N.C. 297; McCrowell v. R. R., 221 N.C. 375.