(81 South. 41)

WILLIAMS v. WILLIAMS et al.
(6 Div. 803.)

(Supreme Court of Alabama. Jan. 16, 1919.)

1. GUARDIAN AND WARD ⊂⊃165—PROCEEDINGS IN PROBATE COURT—ACTIONS TO CORRECT ERRORS.

Code 1907, §§ 3914, 3916, relating to correction in equity of errors in proceedings in probate court, were not intended to provide a new trial de novo in chancery court.

2. GUARDIAN AND WARD ⊂⊃165 — PROCEEDINGS IN PROBATE COURT—CORRECTING ERRORS.

Code 1907, §§ 3914, 3916, were not intended to furnish mode of reviewing and revising judgments and decrees of probate court by correcting errors which could and should have been corrected or prevented in the latter court, not being tantamount to, nor in lieu of, right to appeal.

3. GUARDIAN AND WARD ⊂⊃165 — PROCEEDINGS IN PROBATE COURT—ACTION TO CORRECT.

That Code 1907, §§ 3914, 3916, relating to correction of errors in proceedings in probate court, confer right to correct errors from which relief could not otherwise be obtained, does not require relief to be denied merely because it could be obtained by appeal or otherwise.

4. GUARDIAN AND WARD ⊂⊃165 — PROBATE PROCEEDINGS—CORRECTION OF ERRORS.

Code 1907, §§ 3914, 3916, were not intended to provide for total cancellation or annulment of judgments or decrees in probate court, but only to correct or modify them to extent that they were infected with error.

5. PLEADING ⊂⊃34(4) — CONSTRUCTION AGAINST PLEADER.

On demurrer allegations of bill are to be construed against complainant.

6. GUARDIAN AND WARD ⊂⊃30(1)—MAINTENANCE OF WARD—NATURAL OR FOSTER PARENTS.

A natural or foster parent, who is also legal guardian, may, in proper cases, maintain child and ward out of corpus of child's estate, if interest or income thereof is not sufficient or adequate, and parent is not financially able to maintain child according to its station in life and necessities.

7. PARENT AND CHILD ⊂⊃3(2)—DUTY OF FATHER TO SUPPORT CHILD.

A father is primarily bound to support and educate his children during their minority, but, when he has not the ability so to do in accordance with their station in life, assistance will be granted him from their private estates, if such they have.

8. PARENT AND CHILD ⊂⊃5(1)—SERVICES OF CHILD.

A parent is entitled to services of his children during minority.

9. PARENT AND CHILD ⊂⊃4—DUTY OF CHILDREN TO SUPPORT PARENT.

It is the duty of a child to support his parent if parent is unable to support himself and child is.

10. GUARDIAN AND WARD ⊂⊃165—ACCOUNT BY GUARDIAN—ACTION TO CORRECT.

Where it affirmatively appears, from a bill filed under Code 1907, §§ 3914, 3916, to correct error of probate court in settlement of accounts of plaintiff's guardian in that guardian was plaintiff's foster father, and should not have been allowed anything for plaintiff's maintenance, that plaintiff appeared at settlement by guardian ad litem and denied guardian's right to such sums under oath, it must be presumed that guardian showed that he was entitled to sums allowed him, and adjudication of probate court is res adjudicata on such issue.

11. JUDGMENT ⊂⊃948(2)—RES ADJUDICATA—PLEADING.

The defense of res adjudicata may be raised by demurrer where pleading and its exhibits affirmatively show that issue has been passed on in another proceeding.

12. JUDGMENT ⊂⊃949(1)—RES ADJUDICATA—PLEADING.

It is no answer to doctrine of res adjudicata to allege that facts were not as adjudged or decreed.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by Walter Williams, pro ami, against Charles Williams and others. Decree for defendants, and plaintiff appeals. Affirmed.

G. M. Edmonds, of Birmingham, for appellant.

Percy, Benners & Burr, of Birmingham, for appellees.

MAYFIELD, J. The bill in this case is filed under sections 3914 and 3916 of the Code of 1907, to correct errors of the probate court in the settlement of the accounts of appellee as guardian of appellant.

The alleged errors consist in allowing the guardian $12 per month out of the estate of the ward for his maintenance, from December, 1914, to December, 1916, amounting in all to $295.98.

The sole ground alleged to show the allowance to be error is that the guardian was the foster father of the ward, and therefore should have maintained him out of the guardian's estate and not that of the ward.

The trial court sustained a demurrer to the original bill. The complainant amended his bill five times, a demurrer being sustained to the bill after each amendment. From the decree sustaining the demurrer to the bill as last amended the complainant prosecutes this appeal.

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The substance of the amendments was to allege, in terms more or less general, that the allowance was procured by fraud on the part of the guardian, by false swearing, by concealing from the court the fact that the guardian was the foster parent of the ward, made so by adopting the ward as his child. The ward was ignorant of the fact that his guardian had adopted him, and that the adoption was had in order for the guardian to get possession of the person and estate of the ward. His entire estate was shown to be only $332.50.

The real equity of the bill was not very much strengthened, if any, by any or all of the amendments. Much of the matter added by the amendments was irrelevant and immaterial in this or a similar proceeding. If this had been an application to appoint the guardian, or had been an original hearing on a partial or final settlement of the accounts of the guardian, the matters added by amendments might have been important and material; but not in a bill like this, merely to correct errors in the settlement of the accounts.

A number of cases have been brought to this court which involved a construction of one or both of these sections of the Code. Many, if not all, of the cases have been recently collected, cited, and ably and thoroughly reviewed by Justice Thomas in the case of Evans v. Evans, 76 South. 95–103.[1] It is therefore useless to again review the decisions so construing the statute.

[1-4] It is conceded the bill must be sustained by virtue of these statutes or not at all. From these cases cited and reviewed by Justice Thomas the following principles may be deduced as to the purpose and effect of the two sections of the Code: (1) The statutes were never and are not now intended to provide a new trial de novo in the chancery court. (2) Nor were they intended to furnish a mode of reviewing and revising in the chancery court judgments and decrees of the probate court by correcting errors which could and should have been corrected or prevented in the probate court; that is, the statutes are not tantamount to, nor in lieu of, the right to appeal. (3) That the statutes do confer the right to correct errors as for which relief could not otherwise be obtained, and relief is not to be denied merely because it could be obtained by appeal or otherwise. (4) The statutes were not intended to provide for the total cancellation or annulment of judgments or decrees in the probate court, but only to correct or modify them to the extent that they were infected with error.

[5] The real trouble with complainant's bill is he does not show, construing his allegations against him, as we must do on demurrer, that there were any "errors of law or fact in the settlement of the accounts of the guardian." The main, if not the sole, question and issue before the probate court was whether or not the items complained of were proper charges against the estate of the ward, there being no question as to the reasonableness of the amount.

[6] The theory of the bill is that the items were not properly chargeable against the ward's estate, because the guardian was his foster parent, and this fact was concealed from the probate judge. This fact, if true, would not conclusively make the charge improper or illegal. A natural parent, who is also the legal guardian, may, in proper cases, maintain the child and ward out of the corpus of its estate, if the interest or income thereof is not sufficient or adequate, and the parent is not financially able to maintain the child according to its station in life and necessities.

[7-9] The following relations and duties existing between the parent and child have been frequently declared by this court: A father is primarily bound by the laws of the land, of nature, and of morals to support and educate his children during their minority; but, when he has not the ability so to do in accordance with their station in life, assistance will be granted him from their private estates, if such they have. Beasley v. Watson, 41 Ala. 234; Alston v. Alston, 34 Ala. 15; Greenwood v. Coleman, 34 Ala. 150; Watts v. Steele, 19 Ala. 656, 54 Am. Dec. 207. To this end, and for this reason, the parent is entitled to the service of the children during minority, and it is therefore likewise the duty of the child to support the parent if the parent is unable to support himself and the child is able so to do. If the child has an estate and the parent none, the child should be supported out of its own estate. Stewart v. Lewis, 16 Ala. 734; Bellamy v. Thornton, 103 Ala. 409, 15 South. 831; Code, § 1614; Louisville & N. R. Co. v. Jones, 130 Ala. 456, 30 South. 586; Myers v. Myers, 2 McCord Eq. (S. C.) 214, 16 Am. Dec. 648; Cooley v. Stringfellow, 164 Ala. 467, 51 South. 321.

[10] It is true this bill alleges that the foster parent was able to support and maintain the child and ward, and hence it was error to make the support and maintenance a charge against its estate. The trouble with this allegation and insistence is that other parts of the bill show that this very question was adjudicated and decided by the probate court contrary to the allegation. Courts cannot give more credence to ex parte allegations of a pleader than to the solemn judicial decrees and judgments of courts of record. It is true, as before stated, the bill alleges, in general terms, that the relation of the ward and guardian was fraudulently concealed from the probate judge; but, if

[1] 200 Ala. 329.

the relation had been revealed, there is nothing to show that the charge or account was erroneous. We must presume the probate court inquired into the relation between the ward and the guardian. The guardian ad litem denied each item of the account, and hence the very questions here complained of were made an issue, were litigated, and determined. The decree of the probate court prima facie not only decided that it was not the duty of the guardian to maintain the ward out of the guardian's estate, but that there was no natural or legal parent whose duty it was to pay the expenses for the maintenance of the ward, and that it should be paid out of the corpus of the ward's estate.

In other words, when the guardian filed his account he in law affirmed that he, and no other person, ought to pay for this maintenance, but that it was a proper charge against the ward's estate. The guardian ad litem denied this. It was therefore made an issue, and the guardian ad litem, so far as the bill shows, could have proved, and, so far as we know, did prove, every fact that could be proved under this bill; and yet the trial court found the charge to be a proper one. No collusion or fraud is alleged on the part of the guardian ad litem or the trial judge. The guardian ad litem did not accept the statement and account made by the guardian, but denied them under oath. This required the guardian to prove the legality and correctness of the charge, and the court adjudicated the question. The questions, therefore, now sought to be adjudicated have been once adjudicated by a court of competent jurisdiction between the same parties, all of whom are shown to have appeared and litigated, and no such fraud to have intervened as would authorize a court of chancery to annul the judgment even pro tanto.

In the early case of Waring v. Lewis, 53 Ala. 615, the progenitors of the present statutes were invoked to aid equity to revise and correct a decree of the probate court on facts very much like those now alleged in this bill, and the court, speaking through Brickell, C. J., said, among other things:

"By its judgment a court of equity has never interfered with the judgment of a court of law, or the decree of a court of probate, nor detracted from its conclusiveness, nor reopened the litigation involved in its rendition, unless on facts or grounds of which the party complaining could not have availed himself when the judgment or decree was rendered, because of accident, or the fraud or act of his adversary, unmixed with fault or negligence on his part. King v. Smith, 15 Ala. 270; Watts v. Gayle, 20 Ala. 826; Allman v. Owen, 31 Ala. 167; Moore v. Lesueur, 33 Ala. 237; Duckworth v. Duckworth, 35 Ala. 70; Otis, Adm'r, v. Dargan [53 Ala.] 178.

"The bill does not aver, and the averment could not have been made consistently with the evidence, that all the facts in reference to the devastavit, now imputed to Roberts, could not have been discovered by reasonable diligence, or were in truth unknown, when the settlement was made in the court of probate. Nor is any reason or excuse averred, nor could any have been averred and' proved, for not presenting then for adjudication these facts, if they were not in fact adjudicated. It is not an answer to say that Roberts fraudulently concealed the fact that the gold coin alleged to have been deposited by the intestate with him, or with the bank of which he was cashier, had been received by him, and appropriated to his own use; and also concealed his reception of the other sums of money, for which it is said he did not account. Such a concealment is odious, and would have authorized an appeal to equity, for discovery and relief, before the adjudication in the court of probate, even after its jurisdiction had attached. Blakey v. Blakey, 9 Ala. 391; Hunley v. Hunley, 15 Ala. 91. But of this fraud, if perpetrated, the court of probate had cognizance, and could have redressed it on the final settlement. Fraud is certainly a general head of equity jurisdiction, and will be relieved against; but in many instances it lies also within the cognizance of other tribunals; and when it arises in the proceedings had in such tribunals, and the proceedings ripen into a final judgment or decree, it is as conclusive of the question of fraud as of any other matter involved in its rendition. 3 Lead. Eq. Cases, 185. * * *

"Litigation would never be quieted, and the decrees of the court of probate, rendered in the exercise of the most important branch of its jurisdiction, would be valueless, if a court of equity could reopen this settlement and decree, and enter on a new adjudication of the facts they involve. The decree of a court of probate, rendered on the final settlement of an administration, its jurisdiction having attached, and being complete, is of equal dignity, and as final and conclusive, as the judgment of a court of law, or the decree of a court of chancery, not only of facts actually litigated and decided, but of all facts necessarily involved in its rendition. Watson v. Hutto, 27 Ala. 515; Watt v. Watt, 37 Ala. 547; Modawell v. Holmes, 40 Ala. 404."

It is true that there was some difference of opinion between the judges of this court as to the purpose and effect of the statutes in question, the difference being chiefly between Justices Brickell and Stone, and the statute was subsequently amended, as pointed out by Justice Thomas in the opinion of Evans v. Evans, 76 South. 95;[2] but this difference of opinion or change of the statute did not relate to or affect the question now under consideration. Judge Stone was on the bench when Judge Brickell wrote the above, and concurred therein.

Considering the bill, with its exhibits as a part thereof, it is wholly inconsistent. The main equity of the bill relied upon is that the guardian fraudulently concealed from the probate judge that he was the father of the ward by adoption; yet the exhibits to

[2] 200 Ala. 329.

the bill show, by the solemn records of the court, that the same judge and same court appointing appellee guardian of the ward's estate, and that passed on the settlement complained of, was the same judge and same court that passed on the guardian's application to adopt his ward. Therefore it is shown by the records of the same court, made by the same judge, that appellee was, by that same court and judge, made both foster father and guardian of appellant. How could the probate court or the probate judge be fraudulently deceived as to the existence of the relation between these parties, when that court and that judge had created that relation, and it was then a matter of record in that court?

The bill in this case does show affirmatively that the correctness of the account complained of, and the question as to whether or not it should be allowed as a charge against the ward's estate, or disallowed as such, was made an issue; that all the parties interested in the matter were before the court, the infant being represented by a guardian ad litem, as the law directs; that the guardian ad litem did what the law required him to do, and there is no allegation that he was in collusion with the guardian or conspired against the ward; that the questions were litigated and adjudicated, and, so far as this record shows, would have been affirmed on appeal to this or to the circuit court.

The question now sought to be raised and again decided is certainly shown to be res judicata, and no fraud is shown in so procuring it to be res judicata as to authorize annulling a proceeding in toto or correcting it pro tanto.

[11, 12] Construing the bill most strongly against the pleader, as we must on this hearing, no facts were shown to invoke the jurisdiction of the chancery court under sections 3914 and 3916, or its original jurisdiction to set aside or annul judgments at law. The doctrine of res judicata is therefore a complete answer to the bill, which it affirmatively shows on its face, taking its exhibits as a part thereof, and hence it could be raised by demurrer. It is no answer to the doctrine to allege that the facts were not as adjudged or decreed; if it be res judicata, the parties to it are estopped to dispute those facts.

The Supreme Court of the United States has strongly illustrated the conclusion and absolutism of this doctrine by saying that, as between the parties bound thereby, it makes black white and crooked straight.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.