**William C. HOYT, Jr., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18500.**

United States Court of Appeals
Fifth Circuit.
Jan. 20, 1961.

---

William B. Matthews, Ozark, Ala., Albert W. Copeland, Euel A. Screws, Jr., Montgomery, Ala., Robert W. Fraser, Santa Ana, Cal., Godbold, Hobbs & Copeland, Montgomery, Ala., Charles O. Stokes, Ozark, Ala., Fraser, Hewett & Rickles, Santa Ana, Cal., of counsel, for appellant.

Paul L. Millirons, Asst. U. S. Atty., Hartwell Davis, U. S. Atty., Montgomery, Ala., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

On January 24, 1959, Sean Paul Hoyt, aged seven years, was killed on the Fort Rucker military reservation. The fatality was caused by the collapse of the walls of a drainage ditch in which he was playing. The deceased child's father, William C. Hoyt, Jr., brought this wrongful death action against the United States under the Federal Tort Claims Act.[1] The district court ruled that the United States was guilty of negligence which proximately caused the death of Sean Paul Hoyt. The court then noted that:

> "The only serious question in this case is the question of the amount of damages which may be allowed. Plaintiff sought to prove by the introduction of mortality tables the life expectancy of the deceased and the life expectancy of the plaintiff, the beneficiary under Alabama's Wrongful death statute, and asks tne court to award substantial damages to him on this evidence. Sufficient proof was made by the plaintiff to entitle him to recover the amount of $579.-22, representing expenses incurred

by him incident to the funeral for his son. However, the proof was wholly insufficient for the court to award any greater recovery, as such an award would be merely speculative.

> "Since any recovery under the Wrongful Death Statute in Alabama is strictly punitive, the court may award only 'pecuniary damages.' Title 28, § 2674, U.S.C.A.; Heath v. United States, 1949, D.C.Ala., 85 F. Supp. 196.

> "The court, therefore, concludes that the death of Sean Paul Hoyt on January 24, 1959, was proximately caused by the negligence of the United States of America, acting by and through its officers, agents, servants, or employees, and that the plaintiff suffered total 'pecuniary damages' in the amount of $579.22."

This appeal presents the single question of what damages are recoverable for the negligent death of a minor child in Alabama under the standards of 28 U.S. C.A. § 2674.

As originally passed, the Tort Claims Act provided for liability on the part of the United States solely "in accordance with the law of the place where the act or omission occurred." [2] The waiver of sovereign immunity was qualified by the proviso that the United States was not to be liable for punitive damages.[3] It soon became apparent that no recovery could be had against the United States for wrongful deaths caused by it in Alabama, because Alabama law provides that the only damages recoverable in a wrongful death action are punitive.[4] To remedy this situation, and a like discrimination as to deaths caused in Massachusetts, the Tort Claims Act was amended in 1947 to provide:

> "If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has

---

1. 28 U.S.C.A. §§ 2671–2680.

2. 28 U.S.C.A. § 1346.

3. 28 U.S.C.A. § 2674.

4. See Heath v. United States, D.C.N.D. Ala.1949, 85 F.Supp. 196; Louisville & N. R. Co. v. Bogue, 1912, 177 Ala. 349, 58 So. 392.

been construed to provide, for damages only punitive in nature, the United States shall be liable for *actual or compensatory damages, measured by the pecuniary injuries* resulting from such death to the persons respectively, for whose benefit the action was brought in lieu thereof." [5]   (Emphasis supplied.)

As a result of this amendment, in a wrongful death action brought under the Tort Claims Act where the act or omission causing death occurs in Alabama, the United States is liable for "actual or compensatory damages, measured by the pecuniary injuries." [6]

In giving content to the words "actual or compensatory damages, measured by the pecuniary injuries," we were inclined initially to look to the law of Alabama. This was so because the general theory of the Tort Claims Act is that the outcome of each case is to be determined in accordance with the law of the state where the death occurred.   Thus, we viewed our task as attempting to determine what types of loss Alabama would consider compensable, if Alabama provided for recovery of "compensatory damages, measured by the pecuniary injuries" for the wrongful death of a minor.   These elements of damage would then be considered in measuring damages against the United States, and the issue would thus be resolved as closely as possible in accordance with the law of the place where the death occurred. By searching authorities of ancient vintage and by a somewhat tortuous process of reasoning by analogy, we were able to establish that Alabama had, at a time when its laws provided for compensatory damages in wrongful death cases, considered loss to the parents of the infant's earnings and services which would have been received by the parents during the child's minority, plus certain direct expenditures, as injuries for which there could be recovered compensatory damages.[7]   After careful consideration, we rejected this approach to the problem.

For the real question here is one of congressional intent.   What did Congress mean when it substituted the "compensatory damages, measured by the pecuniary injuries" standard for the punitive damage standard which was the sole basis of recovery for wrongful death under Alabama law?  If we take the approach outlined above, we are imputing to Congress an intent to base the measure of damages recoverable against the United States for wrongful death in Alabama on a handful of fifty-year-old cases, no one of which is applicable today in Alabama courts for the purpose for which we would adopt them.   There is no evidence in the legislative history that Congress was even aware of the existence of these obscure authorities.[8]   We think a construction which would impute to Congress an intent to have us turn to the murky recesses of Alabama law to construe the 1947 amendment to the Tort Claims Act is unacceptable.   This conclusion is buttressed by the simplicity and obviousness of an alternative approach.

■ In the 1947 amendment, Congress stated that it was establishing the standard of "actual or compensatory damages, measured by the pecuniary injuries" *"in lieu"* of the state standard of punitive damages.   Why not take this proviso at

5. 28 U.S.C.A. § 2674.

6. H.Rep. No. 748, June 30, 1947, reprinted in U.S.Code Cong. & Ad.News, 80th Cong., 1st Sess., p. 1548; Heath v. United States, D.C.N.D.Ala.1949, 85 F. Supp. 196.

7. See Williams v. South & N. A. R. Co., 1891, 91 Ala. 635, 9 So. 77, 78 (loss of services) ; Bube v. Birmingham Railway, Light & Power Co., 1904, 140 Ala. 276, 37 So. 285, 286 (same).   Cf., Tutwiler Coal, Coke & Iron Co. v. Enslen, 1901, 129 Ala. 336, 30 So. 600, 604 (loss of earnings and direct outlays) ; Tennessee Coal, Iron & R. Co. v. Herndon, 1893, 100 Ala. 451, 14 So. 287, 290 (same). The Alabama cases do not employ the term "pecuniary injuries," but speak only of "compensatory" damages.

8. See H.Rep. No. 748, June 30, 1947, reprinted in U.S.Code Cong. & Ad.News, 80th Cong., 1st Sess., p. 1548.

its face value? Congress was rejecting the state measure of damages and imposing instead a federal standard to be construed according to federal law. Theretofore, when Congress had legislated on questions of wrongful death, the damages recoverable had been held to be compensatory and measured by the loss of pecuniary benefits. We refer to the Federal Employers' Liability Act[9] and the Death on the High Seas Act.[10] There is ample authority under these two laws on which we may easily draw to give content to the "actual or compensatory damages, measured by the pecuniary injuries" language of the Tort Claims Act. Where authority is readily available to give content to legislation, we think that it is far more reasonable and in line with the congressional purpose to rely on this authority, than to impute to Congress an intent to resuscitate long-gone principles of state jurisprudence.

Our decision to look to federal law in construing the "pecuniary injuries" language of the statute is buttressed by an important practical consideration. The Alabama cases which hold that parents may recover solely for loss of services and earnings during minority were decided at a time when there were no child labor laws, and it was quite common for minors to be engaged in remunerative activity. Thus, the application of the pecuniary injuries standard allowed a substantial recovery to the parents. Today, however, in addition to child labor laws,[11] we may note that many more young people are completing high school

and going on to college, so that the years of their minority do not produce income for the parents. As a result, a measure of damages which limits, in part, recovery to loss of earnings during minority would result in only a nominal recovery for the parents. Faced with this situation, injured parents would doubtless turn to Congress, pressing their claims in private bills. But it was to eliminate this private bill system of relief that the Tort Claims Act was passed.[12] Thus, we believe our construction of the 1947 amendment to the Act comports with both the legislative intent in passing the amendment and the overriding purpose of the Tort Claims Act.

Under the Federal Employers' Liability Act, which was early construed to provide for damages resulting solely from pecuniary injuries, the following general measure of damages has been laid down by the Supreme Court:

"* * * The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased."[13]

As applied in this case, the standard is: "What contributions could * * * [Mr. Hoyt] have expected from [his] son over the years."[14]

For purposes of analysis, the pecuniary injuries to a parent flowing from the death of a minor son, may be broken down into two categories.[15] First, the loss of benefits which the par-

9. 45 U.S.C.A. § 51; Michigan Central R. R. Co. v. Vreeland, 1913, 227 U.S. 59, 70, 71, 33 S.Ct. 192, 57 L.Ed. 417; Gulf, Colorado & S. F. Ry. Co. v. McGinnis, 1913, 228 U.S. 173, 175, 176, 33 S.Ct. 426, 57 L.Ed. 785; Chesapeake & Ohio Ry. Co. v. Kelly, 1916, 241 U.S. 485, 489, 36 S.Ct. 630, 60 L.Ed. 1117.

10. 46 U.S.C.A. § 761. The measure of damages applied in FELA and DOTHSA cases is the same. See Middleton v. Lukenbach S.S. Co., Inc., 2 Cir., 1934, 70 F.2d 326, 330.

11. 29 U.S.C.A. § 212; Code of Alabama, 1958, Tit. 26, §§ 343-375.

12. See Gottlieb, The Federal Tort Claims Act—A Statutory Interpretation, 35 Geo. L.J. 1 (1946).

13. Chesapeake & Ohio Ry. Co. v. Kelly, 1916, 241 U.S. 485, 489, 36 S.Ct. 630, 631, 60 L.Ed. 1117.

14. Southern Railway Co. v. Neese, 4 Cir., 1954, 216 F.2d 772, 774.

15. See Raines v. Southern Ry. Co., 1915, 169 N.C. 189, 85 S.E. 294, 296, L.R.A. 1918C, 1052; Dooley v. Seaboard Air Line Ry. Co., 1913, 163 N.C. 454, 79 S.E. 970, 972-973, L.R.A.1916E, 185.

ent would have been legally entitled to under state law. In this first category would fall the loss of the services and earnings of the child during minority.[16] The second category consists of the loss of future "gifts"; i. e., all other material goods and services which a parent, though not legally entitled to, might reasonably expect to receive from his child during his lifetime.[17]

The cases further show that proof of actual contributions made to the parents prior to the child's death is not a prerequisite to recovery. The crucial question is: What could the parents reasonably have *expected* to receive during their lifetime and the lifetime of the child?[18]

■ It is also established that pecuniary injuries do not include grief, loss of society or companionship.[19]

Applying these principles to the case at bar, we think it is clear that the plaintiff below, the father of the deceased

Sean Paul Hoyt, did sustain pecuniary injuries, in addition to the funeral expenses,[20] from the death of his son, for which he is entitled to compensatory damages.

There remains, of course, the difficult question of measuring the dollar amount of damages which a parent sustains as the result of the death of a child of tender years. Obviously, these damages cannot be established with certainty. But certainty is not required.

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the

16. In an FELA suit on behalf of the father of a wrongfully killed minor, the Supreme Court has held that pecuniary injury to the father includes loss of earnings during minority, if the father was entitled to these earnings under state law. See Minneapolis & St. Louis Railroad Co. v. Gotschall, 1917, 244 U.S. 66, 68, 37 S.Ct. 598, 61 L.Ed. 995. In Alabama, a father is legally entitled to the earnings of his minor child. See Donegan v. Davis, 1880, 66 Ala. 362, 373; Williams v. Williams, 202 Ala. 539, 81 So. 41.

17. See Michigan Central R. R. Co. v. Vreeland, 1913, 227 U.S. 59, 70, 33 S.Ct. 192, 57 L.Ed. 417; Walker v. Missouri Pac. Ry. Co., 1922, 210 Mo.App. 592, 243 S.W. 261, 264; Raines v. Southern Ry. Co., 1915, 169 N.C. 189, 85 S.E. 294, 296, L.R.A.1918C, 1052.

18. "We do not say that it was necessary that the actual benefit should have been derived; a reasonable expectation is enough; and such reasonable expectation might well exist, though, from the father not being in need, the son had never done anything for him." Franklin v. South Eastern R. R. Co., 4 Hurl & N. 511, an English case, quoted and relied on in construing the FELA which was modeled after Lord Campbell's Act (see Michigan Central R. R. Co. v. Vreeland, 227 U.S.

59, 33 S.Ct. 192, 57 L.Ed. 417) in Dooley v. Seaboard Air Line Ry. Co., 1913, 163 N.C. 454, 79 S.E. 970, L.R.A.1916E, 185. To the same effect, see Southern Railway Co. v. Neese, 4 Cir., 1954, 216 F.2d 772, 774; Petition of Gulf Oil Corporation, D.C.S.D.N.Y.1959, 172 F.Supp. 911, 921.

19. See Michigan Central Railroad Co. v. Vreeland, 1913, 227 U.S. 59, 70–71, 33 S.Ct. 192, 57 L.Ed. 417; Middleton v. Luckenbach S.S. Co., Inc., 2 Cir., 1934, 70 F.2d 326, 330.

20. There is some authority under the FELA that pecuniary injury to surviving relatives does not include funeral expenses. See, e. g., Philadelphia & Reading Ry. Co. v. Marland, 3 Cir., 1917, 239 F. 1, 10–11. The theory of those cases, in which the decedent was an adult, is that the loss for funeral expenses is sustained by the estate of the decedent since his estate was liable to pay them, and his estate may maintain a separate action for this loss. This reasoning would not apply, however, to the case at bar, where the decedent was a minor and thus his parent, rather than his estate, was primarily liable for the funeral expenses. See 39 Am.Jur. Parent and Child, § 51 at 685; 67 C.J.S. Parent and Child § 22, p. 727 (collecting cases).

extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. Eastman Kodak Co. [of New York] v. Southern Photo Co., 273 U.S. 359, 379 [47 S.Ct. 400, 71 L.Ed. 684]; Compare The Seven Brothers [D.C.], 170 F. 126, 128; Pacific Whaling Co. v. Packers' Ass'n, 128 Cal. 632, 638 [72 P. 161]. As the Supreme Court of Michigan has forcefully declared, the risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party. Allison v. Chandler, 11 Mich. 542, 550–556." [21]

In estimating the amount of damages, the district court should consider the age of the child, his health, mental attitude and ability, and his relations with and attitude toward his father. In addition, consideration should be given to the age, health and life expectancy of the party who is claiming the loss.

Appellant showed that Sean Paul Hoyt was aged seven years, four months and three weeks and that his life expectancy was 57.7 years when he was killed. "Sean was a happy child, he was independent, and proud of being able to do things for himself. If you would show him how to do something once, that was all that was necessary * * *. He would keep himself nicely dressed * * *. He would work around the house, clean up his room, make his bed * * *." Sean was "obedient." He had no physical deformities. His grades were above average—he received all A's and B's on his last report card in the second grade. Appellant also showed the health, life expectancy and financial status of the plaintiff, Mr. Hoyt. This evidence was sufficient to support a judgment in favor of the father of Sean Paul Hoyt in excess of the funeral expenses. [22]

It can be argued, as a matter of cold logic, that once the court below arrives at a figure for pecuniary loss, there should be deducted the cost of rearing the child to majority in order to arrive at a "net loss." Compare Snyder v. United States, D.C.D.Md.1953, 118 F.Supp. 585, 593. The effect of such a deduction, however, would almost always result in a minus figure where the deceased child was of tender years. [23] To read the Tort Claims Act in such a way would practically preclude recovery against the United States for wrongful deaths of young children, and thus defeat the overriding purpose of the Act in such cases.

21. Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 563, 51 S.Ct. 248, 250–251, 75 L. Ed. 544. See also, Palmer v. Connecticut Ry. & Lighting Co., 1941, 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336. "The injured party is not to be barred from a fair recovery by impossible requirements. The wrongdoer should not be mulcted, neither should he be permitted to escape under cover of a demand for nonexistent certainty." Id., 311 U.S. at pages 560–561, 61 S.Ct. at page 385.

22. In the case at bar, the father testified: "I wouldn't expect any of my children to support me, that is the way I feel about it, and I would expect to support myself. They would have themselves and their families to worry about without supporting me." If this prediction is taken at face value, it might severely limit plaintiff's right to recover. The quoted statement, however, is no more than a prediction. The father can foresee the future with no more certainty than can the court. His testimony does not preclude the court from giving consideration to all of the facts and circumstances that appear from the evidence. See Raines v. Southern Ry. Co., 1915, 169 N.C. 189, 85 S.E. 294, 296, L.R.A.1918C, 1052 ("We cannot foretell what a man will do with his estate in the future * * *.")

23. Mr. Hoyt estimated that it cost him $40–$50 per month to maintain his child. Even assuming that expenditures remained at this low level, which is unlikely in the case of growing children, the father's gross expenditures on his son to age 21 would total at a minimum around $7,000.00.

We have found no analogous cases on this point under other federal statutes, but we cannot believe that Congress intended to allow any such cold-blooded deduction. Such a deduction is not actually logical for it would treat an incalculable *loss* as a "pecuniary gain." What makes life worth living more than the privilege of rearing a son? Shall that privilege be treated by the law as a liability of which the child's death relieves the parent? Is it not still the law in that most sacred of relationships that it is more blessed to give than to receive? We are entirely without doubt that Congress intended no deduction to be made for the cost of rearing the child to majority.

In Heath v. United States, D.C.N.D. Ala.1949, 85 F.Supp. 196, relied on by the district court, Judge Lynne has ably developed many of the principles of law applicable to an action under this Act for the death of a minor child. In only one respect do our views differ from those of Judge Lynne. We think that the burden of establishing damages with certainty should be governed by the federal rule,[24] rather than by the Alabama decision quoted by Judge Lynne.[25] The action in the Heath case was for the benefit of three grandparents of the deceased minor. As grandparents they were not legally entitled under state law to the services and earnings of the child during minority. Further, Judge Lynne found that, " * * * there was no evidence offered from which the court could draw a fair and reasonable inference that, in the usual course of events in life, either grandparent would have received any financial aid from the deceased had he lived." Heath v. United States, supra, 85 F.Supp. at page 203. That is the same standard to which the present opinion is directed. We agree with the decision in the Heath case, and we think the opinion in that case ably supports our view of the damages recoverable for the negligent death of a minor child in Alabama under the standards of 28 U.S.C.A. § 2674.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

24. See cases cited in text and note 21, supra.

25. Seaboard Manufacturing Co. v. Woodson, 98 Ala. 378, 11 So. 733, 736, quoted in 85 F.Supp. at pages 202, 203.