**James EDWARDS, As Administrator of the Estate of Essie M. Edwards, Deceased; James Edwards, an individual, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

Civ. A. No. 81–230–N.

United States District Court, M.D. Alabama, N.D.

Nov. 17, 1982.

Donald V. Watkins, Watkins, Carter & Knight, Montgomery, Ala., C. Neal Pope, Pope & Hermann, Phenix City, Ala., and Paul D. Hermann, Atlanta, Ga., for plaintiffs.

Kenneth E. Vines, Asst. U.S. Atty., M.D. Ala., Montgomery, Ala., and Mark M. Greenberg, Asst. Gen. Counsel, Gen. Law & Litigation Branch, Army & Air Force Exchange Service, Dallas, Tex., for the U.S.

## OPINION

MYRON H. THOMPSON, District Judge.

The plaintiff James Edwards has brought this cause of action against the United States of America, pursuant to the Federal Tort Claims Act (FTCA),[1] in his capacities as an individual and as administrator of the estate of his deceased wife, Essie M. Edwards, and on behalf of his and his deceased wife's three children.[2] Mr. Edwards claims that his wife's death in a traffic accident was caused by the negligence of an employee of the federal government.

---

1. 28 U.S.C. §§ 2671–2678.

2. Mr. Edwards initiated this action in his individual capacity and in his capacity as adminis-

trator of his deceased wife's estate only. The parties stipulated prior to trial that Mr. Edwards could also pursue damages on behalf of his and his deceased wife's children.

Jurisdiction over this cause of action, which was tried without a jury, is properly predicated on 28 U.S.C. § 1346(b).[3]

## I. FACTS

On December 1, 1978, Larry Wallace, a truck driver for the Army Air Force Exchange Service, was driving a government tractor-trailer truck north on U.S. Highway 331, near Opp, Alabama, when another truck driver informed him over his citizens band radio that his brake lights were not functioning. Wallace had just delivered a truckload of goods from Maxwell Air Force Base in Montgomery, Alabama to Eglin Air Force Base in Fort Walton Beach, Florida, and was en route back to Montgomery. Rather than immediately pulling off the road and notifying the Exchange Service of the nonfunctioning brake lights, Wallace decided that he would continue to Montgomery and that whenever it became necessary for him to apply his brakes he would announce a warning over his citizens band radio to all persons in trailing vehicles. He alleged at the trial that between Opp and Montgomery there were not any truck stops where faulty brake lights could be repaired.

Approximately 20 to 30 miles south of Snowdoun, Alabama a tractor-trailer truck driven by Mary Mangels and owned by Motor Convoy, Inc. began trailing Wallace's government truck. By use of his citizens band radio, Wallace informed Mangels that his truck was without brake lights but that he would inform her whenever it became necessary for him to apply his brakes. When Wallace and Mangels approached a yellow caution light in Snowdoun, Mangels slowed her vehicle slightly, from 55 to 50 miles an hour. On the other hand, Wallace, alerted by the brake lights on an immediately preceding truck, decreased his speed from 55 to 25 miles an hour by "down-shifting" and applying his brakes. He failed, however, to warn Mangels. When the dis-tance between the Mangels and Wallace trucks decreased from about 100 yards to 50 yards, Mangels realized that Wallace was substantially slowing his truck and was applying his brakes, and, as a result, she began applying her brakes also. Also, about this time, Wallace warned her over his citizens band radio that he was applying his brakes; but it was too late. Her truck continued to gain on his, which then appeared to have come to a stop. When there remained only a car length between the two trucks, she attempted to avoid a rear-end collision by veering her truck to the left into the oncoming lane, where her truck collided with an oncoming automobile driven by Mrs. Edwards. Mrs. Edwards was killed as a result of the collision.

## II. LIABILITY

■ In determining liability in FTCA cases such as this, a trial court must look to the appropriate law of the forum state. 28 U.S.C. §§ 1346(b), 2674; *Brown v. United States,* 653 F.2d 196, 198 (5th Cir.1981), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); *Bettis v. United States,* 635 F.2d 1144, 1147 (5th Cir.1981).[4] Accordingly, this court now turns to applicable Alabama law.

■ In *Fox v. Bartholf,* 374 So.2d 294 (Ala.1979), the Alabama Supreme Court set forth the following four-part test for determining when a defendant is "statutorily" negligent: (1) "The party charged with negligent conduct [has] violated the statute;" (2) "the statute was enacted to protect a class of persons which includes the litigant seeking to assert the statute;" (3) "the injury was of a type contemplated by the statute;" and (4) "the statutory violation proximately caused the injury." *Id.* at 295–96. *See also Johnson v. I.B.E.W. Local 558,* 418 So.2d 885, 886 (Ala.1982); Note, *The Doctrine of Statutory Negligence in*

---

**3.** Mr. Edwards has exhausted all required administrative remedies. 28 U.S.C. § 2675(a).

**4.** The new Eleventh Circuit has adopted as its precedent the case law of the former Fifth Circuit. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206 (11th Cir.1981) (en banc). *See also Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982) (setting out rules of binding precedent for cases decided after the creation of the Eleventh Circuit.)

*Alabama,* 27 Ala.L.Rev. 155 (1975). This court will now apply this test to the facts in the present case.

The government has conceded that its driver, Larry Wallace, by operating a vehicle on a public highway without functioning brake lights, violated subsection 32–5–240(d)(1) of the Code of Alabama, which provides:

> (d) Additional equipment required on certain vehicles.—In addition to other equipment required in this article the following vehicles shall be equipped as herein stated under the conditions stated in subsection (a) of this section:
>
> (1) On every bus or truck, whatever its size, there shall be the following: on the rear, two red reflectors, one on each side, and one stop light;

and, furthermore, this court finds that by decreasing his speed without giving a warning, he also violated subsection 32–5–58(d) of the Code of Alabama 1975, which provides:

> No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

The Alabama courts have recognized that subsection 32–5–58(d) was intended "to provide that [a] signal must be given if it appears that the movement or operation of another's car might reasonably be affected by the stopping," *Triplett v. Daniel,* 255 Ala. 566, 52 So.2d 184, 185 (1951); and it is evident from subsection 32–5–240(d)(1) that it was intended to require that large vehicles give such signals by stop lights on the rear. It is further apparent from both subsections that they were enacted for the specific purpose of providing rules and requirements which, if followed, would prevent rear-end collisions or the creation of extremely dangerous situations in which trailing motorists would have no choice but to swerve to the right or possibly to the left, in the face of oncoming motorists, in order to avoid such collisions. From these observations, it follows that both Mangels,

as a trailing motorist, and Mrs. Edwards, as an oncoming motorist, were members of the class these two subsections were intended to protect and, furthermore, that the collision between the Mangels and Mrs. Edwards vehicles and Mrs. Edwards' resulting death were the type of accidents and fatal injuries the two subsections were intended to prevent. Three of four elements in the *Fox v. Bartholf* test are therefore met.

■ The fourth element—whether the government driver's negligence proximately caused Mrs. Edwards' death—is the principal issue in this litigation. Mr. Edwards contends that Wallace's negligent operation of the government truck without functioning brake lights and Mangels' negligent inattention were the concurrent causes of the collision and the death of his wife; whereas, the government contends that Mangels' negligence was an intervening, superseding act and that Wallace's negligence was at most a remote cause.

■ The negligence of the government driver need not have been the sole cause of the collision to have been its proximate cause. *Alabama Power Co. v. Taylor,* 293 Ala. 484, 306 So.2d 236, 249 (1975); *Lawson v. General Telephone Co. of Alabama,* 289 Ala. 283, 267 So.2d 132, 138 (1972).

> The general rule is that it is no defense, in actions for injuries resulting from negligence, that the negligence of third persons contributed to cause the injury to the plaintiff if the negligence of the defendant was an efficient cause, without which the injury would not have occurred.

*Watt v. Combs,* 244 Ala. 31, 12 So.2d 189, 195 (1943). Rather, the negligence of a third-party, such as Mangels, will insulate the government from liability only if the third-party's negligence was an "independent, intervening, unforeseeable event." *Vines v. Plantation Motor Lodge,* 336 So.2d 1338, 1339 (Ala.1976); *see also Prescott v. Martin,* 331 So.2d 240, 243 (Ala.1976).

As already noted, the brake lights of a preceding truck alerted Wallace to slow down, which he did; however, Wallace failed to inform Mangels that he was apply-

ing his brakes and slowing down. Wallace therefore created the exact dangerous situation subsections 32–5–240(d)(1) and 32–5–58(d) were intended to prevent: a situation in which a driver in a trailing vehicle would be faced with the "split-second" choice of a rear-end collision or veering to the right or possibly to the left, directly into oncoming traffic, in order to avoid a collision. The result in the instant case was foreseeable and was the "natural and probable consequence" of Wallace's violation of subsections 32–5–240(d)(1) and 32–5–58(d).[5] Accordingly, Wallace's violation of these two subsections proximately caused the collision and Mrs. Edwards' death from the collision.[6]

## III. DAMAGES

The first paragraph of 28 U.S.C. § 2674 generally provides for recovery against the United States to the same extent as against "a private individual under like circumstances," except that "interest prior to judgment" and "punitive damages" are not recoverable. Also, the measurement for such recovery is in accordance with applicable state law, *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Ross v. United States,* 640 F.2d 511, 518–19 (5th Cir.1981). However, in instances where state law limits recovery in wrongful death cases to punitive damages, the second paragraph of the section adds that

> the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefits the action was brought, in lieu thereof.

Since Alabama law limits recovery in wrongful death cases to punitive damages, § 6–5–410, Code of Alabama 1975; *see also, e.g., Lowe v. General Motors Corp.,* 624 F.2d 1373 (5th Cir.1980); *Merrell v. Alabama Power Co.,* 382 So.2d 494 (Ala.1980), the second paragraph is applicable to the instant case. *Massachusetts Bonding & Ins. Co. v. United States,* 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189 (1956); *Hoyt v. United States,* 286 F.2d 356 (5th Cir.1961). *See also Chesser v. United States,* 387 F.2d 119 (5th Cir.1967).

In *Hoyt v. United States, supra,* the appellate court for the Fifth Circuit was confronted with the issues of what types of damages are recoverable under the second paragraph of section 2674 and how these damages are measured. The *Hoyt* court, after noting that such issues are resolved according to federal rather than state law, adopted as its guidance the case law authority created around the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51–60, and the Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 761–67. *Id.,* 286 F.2d at 359 ("There is ample authority under these two laws on which we may easily draw to give content to the 'actual or compensatory damages, measured by the pecuniary injuries' language of the Tort Claims Act.") The *Hoyt* court, relying on *Chesapeake & Ohio Railway Co. v. Kelly,* 241 U.S. 485, 489, 36 S.Ct. 630, 631, 60 L.Ed. 1117 (1916) and *Michigan Central Railroad Co. v. Vreeland,* 227 U.S. 59, 70–71, 33 S.Ct. 192, 196, 57 L.Ed. 417 (1913), both FELA cases, then indicated that the measurement for FTCA damages is the

> equivalent to compensation for the deprivation of the reasonable expectation of

---

**5.** The government's contention that Mrs. Edwards was contributorily negligent because she did not have a driver's license at the time of the accident is wholly without merit. Her failure to have a driver's license had no causal connection with the collision. *Giles v. Gardner,* 287 Ala. 166, 249 So.2d 824, 827 (1971).

**6.** It is undisputed that Mrs. Edwards' death was proximately caused by the collision.

The court also notes that the government is also liable under the theory of "common law" negligence. *See, e.g., Elba Wood Products, Inc.*

*v. Brackin,* 356 So.2d 119, 122 (Ala.1978); *Sanders v. Scarvey,* 284 Ala. 215, 224 So.2d 247 (1969). Measured by the "reasonable man" standard, the government driver was negligent in continuing his journey to Montgomery without functioning brake lights, and he was negligent in failing to warn Mangels that he was applying his truck brakes and slowing down; and, for the reason given above, his negligence proximately caused the collision between the vehicles driven by Mangels and Mrs. Edwards.

pecuniary benefits that would have resulted from the continued life of the deceased,

*Hoyt, supra,* 286 F.2d at 359, *quoting from Chesapeake & Ohio Railway Co. v. Kelly, supra; see also Chesser v. United States, supra,* 387 F.2d at 120, and that the components of such damages include "loss of services," but not "grief, loss of society or companionship," *Hoyt, supra* 286 F.2d at 360. *See also Mobile Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (DOHSA case); *Michigan Central Railroad Co. v. Vreeland, supra; but see D'Ambra v. United States,* 481 F.2d 14, 20–21 (1st Cir.), *cert. denied,* 414 U.S. 1075, 94 S.Ct. 592, 38 L.Ed.2d 482 (1973).

■ The Supreme Court in *Michigan Central Railroad Co.,* the FELA case relied upon by the *Hoyt* court, stated that as to children, in particular, "loss of services" includes "loss of that care, counsel, training, and education which [a child] might, under the evidence, have reasonably received from the parent." 227 U.S. at 71, 33 S.Ct. at 196. *See also, e.g., Montellier v. United States,* 202 F.Supp. 384, 425, (E.D.N.Y.1962), *aff'd,* 315 F.2d 180 (2nd Cir.1963). *And see Solomon v. Warren,* 540 F.2d 777, 788 (5th Cir. 1976), *cert. dismissed sub nom., Warren v. Serody,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977); *Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524, 526 (5th Cir.1979) (en banc), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). Furthermore, and more recently in *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), a DOHSA case, the Supreme Court indicated that such losses include "[s]ervices the decedent performed at home or for his spouse." 414 U.S. at 585, 94 S.Ct. at 815. *See also Thompson v. Offshore Co.,* 440 F.Supp. 752, 764 (S.D.Tex.1977) (pecuniary losses recoverable under DOHSA include "monetary value of household services the decedent provided and would have continued to provide but for his wrongful death.") Based upon this authority, this court concludes that the losses recoverable under FTCA in cases such as this include (1) loss to the family of household services and (2) loss to the children of care, counsel, training and education.

■ At the time of her death, Mrs. Edwards, age 39, was a loving and devoted wife and mother. She was survived by her husband, James Edwards, 35, and their three children: Jamie Earl, 6; Luceia Denise, 4; and Kizzy Konecia, 1.[7] According to Mr. Edwards, she provided to her family such household services as food preparation, general house cleaning, babysitting, chauffeuring, laundering, and shopping. Relying on Mr. Edwards' testimony, Dr. Fred Johnson, professor of economics at the University of Alabama, calculated the replacement value of Mrs. Edwards' services as follows:

| | |
|---|---|
| Past Loss | |
| From December 1, 1978 to December 1, 1981— | $ 74,000.00 |
| Future Loss | |
| 1) From December 1, 1981 to when the youngest child is in school (2 years) | 49,000.00 |
| 2) From school age of youngest child to her age of majority (12 years) | 160,000.00 |
| 3) Period from youngest child reaching the age of majority to the death of Mr. Edwards (21 years) | 123,000.00 |
| TOTAL LOSS _____ | $406,000.00[8] |

The court finds Mr. Edwards' testimony and Dr. Johnson's calculations to be credible and reliable except in one respect. Dr. Johnson acknowledged at trial that he failed to take into account that certain hours spent by Mrs. Edwards primarily for her family would also have been in part for herself. Dr. Johnson suggested that the above figure of $406,000.00 be reduced by approximately ten percent to account for this. The court finds this suggestion reasonable and credible and therefore reduces the above figure to $365,400.00.

Other recoverable and reasonable damages claimed are past and future loss of care, counsel, training, and education by the

---

7. The ages given are at the time of Mrs. Edwards' death.

8. The calculations include both a "growth rate" for inflation and a "discount rate" for interest. *See Culver v. Slater Boat Co.,* 688 F.2d 280 (5th Cir.1982) (en banc).

three children, to which loss this court assigns a present value of $200,000.00.[9] Furthermore, the parties have stipulated to a value of $1,500.00 for the automobile Mrs. Edwards was driving and to funeral expenses of $1,971.00. The court finds these additional damages and expenses to be justified, and, adding them to the figure of $365,000.00, the court is of the opinion that the evidence sustains a total damages award of $568,871.00.

The parties have informed the court that Mr. Edwards and his children previously received $125,000.00 from Mangels and Motor Convoy, Inc. They have also agreed and stipulated that this amount should be subtracted from any amount awarded by this court. In compliance with this stipulation, the court will award Mr. Edwards, in his various capacities, the reduced sum of only $443,871.00.

A judgment will be entered in accordance with this opinion.